CASE 12—ACTION BY COMMONWEALTH AND R. D. WILSON, ITS AGENT, AGAINST T. S. CLARK, TO RECOVER LAND.—NOVEMBER 17.

# Commonwealth, &c. v. Clark, &c.

APPEAL FROM LEWIS CIRCUIT COURT—JAMES P. HARBESON, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANT'S AND PLAINTIFFS APPEAL.   AFFIRMED.

ADVERSE POSSESSION BY LIFE TENANT—LIMITATION OF ACTIONS—RENUNCIATION OF TRUST—CONSTRUCTIVE NOTICE.

1. Where testatrix, who devised land for life, with remainder over, died before acquiring the legal title to the land, and the life tenant afterwards obtained such title, his possession thereunder was a renunciation of his holding as life tenant, and hence adverse to the remaindermen.

2. A will gave testatrix's land to her son for life, and provided that if the son should die without issue the land should go to the State, to be held in trust for a specified purpose. Testatrix died before acquiring the legal title to the land, and that title was afterward acquired by the son. HELD, that the recording of the deed to the son was constructive notice to the State, as remainderman, of the son's renunciation of the trust created by testatrix's will.

3. Testatrix, after devising land to her son for life, with remainder, if he should die without heirs, to the State in trust, died before acquiring the legal title to the land. The son afterwards acquired such title and held thereunder during his life. HELD, that the son, on acquiring the legal title, became a constructive trustee, and the statute of limitations began at once to run in his favor, and against the State as beneficiary.

W. C. HALBERT, R. D. WILSON & L. W. ROBERTSON, FOR APPELLANTS.

THOS. R. PHISTER, E. L. WORTHINGTON AND SAMUEL J. PUGH, FOR APPELLEES.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

Elizabeth M. Bedford died February 20, 1860, domiciled in Lewis county, leaving a will which was duly admitted to probate. Her son and only child, Robert Bedford, was named

and appointed therein as executor without security, and qualified as such. Such parts of the will as bear upon the questions presented for our consideration by the record herein are as follows:

"First. I give and bequeath to my son, Robert Bedford, all of my lands in Lewis county, to have and to hold during his natural life. If said Robert Bedford should die leaving a child or children of his own body, then those lands are to go to those children and their heirs forever.

"Second. I give and bequeath to my son, Robert Bedford, all the lands and other property I own in the county of Nicholas, to have and to hold during his natural life."

"Fourth. In case my son, Robert, dies leaving children of his own natural body, I give and bequeath all my lands to them and their heirs forever.

"But if my son dies without a child or children, then I desire that all my lands in Lewis and Nicholas be sold, and the money arising from said sales I give and bequeath to the State of Kentucky forever in trust; that the said State will forever hold the same for the use and benefit of the children of the State; that the said State will invest said money in some profitable bank stock, and the profits therefrom I desire to be appropriated annually forever toward the education of the children of the State of Kentucky, particularly the poor and most unenlightened. I desire that this money constitute a permanent school fund, and the interest from this fund to be appropriated annually towards the education of the children of this State."

The testatrix owned at the time of her death, in fee simple, a tract of 343 acres of land situated in Lewis county, one of 300 acres in Nicholas county, and an undivided one-fifth interest in 460 acres in Nicholas and Robertson counties. In addition to these lands, she had in possession, under a

title bond from H. C. Bedinger, 452 acres lying on the Ohio river, at the mouth of Quick Run creek, in Lewis county. Robert Bedford survived his mother 27 years, and died testate in Mason county, Ky., where he then resided, December 23, 1887. His will was probated in the Mason county court February 14, 1888. He died without issue, and by his will devised all his estate to his wife, Susan Bedford, who survived him. It does not appear that the estate of Elizabeth M. Bedford was settled by Robert Bedford, executor; and after his death T. S. Clark, was by order of the Lewis county court appointed administrator thereof, with the will annexed, and duly qualified as such. Thereafter he brought suit in the Lewis circuit court to obtain a decree for the sale of the lands owned in fee simple by Elizabeth M. Bedford at the time of her death. The Commonwealth of Kentucky and its then agent, G. S. Wall, were made parties to the action, together with the brothers and only heirs at law of Elizabeth M. Bedford. An answer was filed for the State by its agent, wherein claim was set up by it to the proceeds of the lands under and by virtue of the will of Elizabeth M. Bedford, and consent given to accept it as a trust for and on behalf of the children of the State. Susan Bedford, widow and sole devisee under the will of Robert Bedford, also filed an answer in the action, which was made a cross petition, and in which it was insisted that the devise in the will of Elizabeth M. Bedford to the State of Kentucky for the education of its children was so vague and uncertain as to make it absolutely void, for which reason the absolute title to the lands sought to be sold vested in her husband, as the only child and heir at law of the testatrix, and at his death in her by the provisions of his will. The chancellor adjudged, however, that the State of Kentucky was entitled, after the death of Robert Bedford, the life tenant, to the proceeds of the

lands described in the petition, under the devise in the will of Elizabeth M. Bedford, and directed its payment to the State's agent. From that judgment an appeal was taken by Susan Bedford, but it was affirmed by this court, and the validity of the devise to the State upheld. Bedford, etc., v. Bedford's Adm'r, etc., 99 Ky., 273, 18 R., 193, 35 S. W., 926.

The tract of 452 acres lying on the Ohio river, at the mouth of Quick Run creek, in Lewis county, was not mentioned or sold in the action referred to. This tract was purchased by Elizabeth M. Bedford of her brother H. C. Bedinger, in 1833, for $3,700 cash in hand paid, and was then supposed to contain 470 acres. At the time of its purchase Bedinger executed to her a title bond, wherein the land was particularly described, the payment of the full consideration acknowledged, the undertaking expressed that the possession of the land would be delivered to the vendee December 1, 1833, and that a deed of general warranty conveying the same would be executed and delivered to her by the vendor on or before August 1, 1834. Possession of the land was delivered at the time stipulated in the bond, but the vendor, Bedinger, before the arrival of the time fixed for the execution of the deed, removed to, and became a resident of, the State of Missouri, where he died in 1847, without having executed a deed to his vendee. On October 12, 1857, Elizabeth M. Bedford brought suit in the Lewis circuit court against the children and heirs at law of her vendor, H. C. Bedinger, setting forth her purchase of the land, the payment by her of the purchase money, and the covenants of the title bond, which was filed with the petition, and prayed a specific performance of the contract by the execution to her of a proper deed upon the part of the heirs at law of the vendor. The heirs filed answer admitting the sale of the land upon the terms contained in the title

bond, and the payment of the purchase money, and expressed their willingness to execute the deed demanded, but averred that the vendee, under color of the title bond, was claiming and holding more of their father's land than had been sold to her. For the purpose of recovering the alleged excess of land, or its value, the answer was made a counterclaim against the plaintiff, and judgment asked against her. It however, later appeared from a survey of the land described in the title bond, made at the instance of the defendants, that, instead of an excess, there was a shortage, in the quantity. In other words, it was found that instead of there being 470 acres in the tract, as expressed in the title bond, it contained only 452 acres, 2 rods, and 18 poles.

During the pendency of the action, and before a judgment was entered therein, the death of Elizabeth M. Bedford occurred, as hereinbefore stated. In June, 1860, this fact was suggested to the court, and an order of revivor entered; and at the succeeding term Robert Bedford filed an amended petition and answer to the counterclaim, in which he set forth the fact that he was the sole devisee under the will, and the only child and heir at law of the testatrix, and asked that the suit be prosecuted in his own name and for his own use.

In June, 1863, a judgment was entered in the cause by agreement of parties, whereby the commissioner was ordered to execute a deed conveying him the land in fee simple, which was done accordingly, and the deed put to record June 6, 1863. The land was held by Robert Bedford under this deed until his death, which occurred December 23, 1887, and after his death Susan Bedford, his widow and sole devisee, held it, under and by virtue of the provisions of his will, until her death, in 1899, though on October 11th she, by deed of general warranty, conveyed it, together with a more valuable tract in Mason county, to her nieces, Nettie Pogue and

Carrie E. Clark, and their husbands; reserving however, to herself the control, use, and profits thereof during her life. Susan Bedford never had any children, but had reared the two nieces to whom, and their husbands, respectively, the land was conveyed by her as stated. The lands thus conveyed them were jointly held by the grantees after the death of Susan Bedford until March 20, 1900, at which time they agreed that Clark and wife should take and own the 452 acres at the mouth of Quick Run creek, in Lewis county, and Pogue and wife the land in Mason county, and pay Clark and wife $5,000 in cash, which was done, and deeds to that effect were passed between the parties.

This action was instituted January 3, 1902, by the appellants, Commonwealth of Kentucky and R. D. Wilson, its agent, against the appellees, T. S. Clark, Carrie E. Clark, his wife, B. F. Jackson, Chas. Variers, John D. Hendrickson, and C. B. Liles, to recover possession of, and quiet its alleged title to, the 452 acres of land situated on the Ohio river, at the mouth of Quick Run creek, in Lewis county. The petition, as amended, contained the averments that the land mentioned was by the will of Elizabeth M. Bedford, deceased, devised to her son, Robert Bedford, for life, with remainder, in the event of his dying without issue, to the Commonwealth of Kentucky, in trust for the education of the poor children of the State; that, though Robert Bedford survived his mother many years, he remained and died childless, by reason of which the title to the land in question vested in the Commonwealth in trust for the education of the poor children of the State; and that the appellees were wrongfully holding the possession of the land, and claiming it as their own. Besides seeking to recover possession of the land, and the quieting of the State's alleged title thereto, it was also asked

in the petition that the land be sold, and its proceeds applied to the use expressed in the will of the testatrix.

The appellees T. S. Clark and Carrie E. Clark filed an answer in which it is denied that the Commonwealth of Kentucky has any title to the land in controversy, and averred that they have and hold the title to same, and further that they and those under whom they claim the land have had and held the actual possession thereof, adversely to appellants and all others continuously for more than 30 years before the institution of this action; and they pleaded the 5, 10, 15, and 30 years' statutes of limitation in bar of any recovery of the land. Appellants demurred to so much of the answer as pleaded the statutes of limitation. The demurrer was sustained by the court as to the pleas of the statutes of 5 and 10 years' limitation, but overruled as to the paragraphs that relied upon the statutes of limitation of 15 and 30 years. Thereupon all affirmative matter in the answer was denied by reply, and the cause was submitted upon the issues thus formed, the deposition of George M. Thomas, and a statement of facts reduced to writing by agreement of the parties. The chancellor, by the judgment rendered, dismissed the appellants' petition upon the ground that the action was barred by the 15 and 30 years' statutes of limitation.

The action of appellants is bottomed upon the theory that, as by the will of Elizabeth M. Bedford, her son, Robert, had a life estate in the land in controversy, the State of Kentucky had no right of action until his death, in 1887, and that, as this action was brought within the 15 years next following that event, the statutes of limitation do not apply. In other words, the contention is, first, that during the lifetime of Robert Bedford limitation did not run, because his possession during that time is not to be counted as adverse to the remaindermen; second, that, having quali-

fied as executor of the will of his mother, the converting of his life estate into a fee simple title should not be allowed to defeat the trust created by her will.

While it is true that the possession of a life tenant can not be adverse to the holder of the legal title in remainder, and likewise true that the possession of a trustee, as such is not adverse to the *cestui que trust*, manifestly these principles can not apply to the case at bar, unless the legal title in remainder has vested in appellants, and a legal title in the life estate had been held by Robert Bedford. In that event the remainderman would have no right of action, either in law or equity, until the termination of the life estate. But such was not the case here, for Robert Bedford acquired and held the legal title in fee simple by and under the deed from the heirs of Bedinger, and his title and possession were adverse to the remaindermen, who had only an equitable estate or equitable title in remainder. Under such circumstances, it would seem that the holder of the equitable title in remainder had a right of action during the life tenancy, if not to recover the land or its proceeds, at least to set aside or reform the deed, or have the trust declared by a court of equity, and such a decree entered as would ultimately lead to its enforcement. It is apparent that the legal title to this land was never in Elizabeth M. Bedford. Though she endeavored to obtain it by the action against the Bedinger heirs, her death occurred before the end in view could be accomplished. After her death the judgment of the court in the action then pending should have directed that Robert Bedford be conveyed by deed from the Bedinger heirs an estate for life in the land, with remainder, in the event of his death without issue, to the State of Kentucky in trust for the education of the children of the State, as in the will of Elizabeth M. Bedford provided, and the deed should have

been executed by the commissioner pursuant to such judgment, but this was not done.

It is evident that the vesting of the fee simple title to the land in Robert Bedford was not accidental. It was intentionally done, because he and his counsel, George M. Thomas and Harrison Taylor, were of the opinion that his mother's will, in respect to the devise of the proceeds of her lands to the State for purposes of education, was void for uncertainty, and that therefore no remainder was created by it, failing which he would take the estate absolutely, as the only heir at law. It afterwards developed that this conclusion was erroneous, but the act of Robert Bedford in taking to himself the title in fee simple manifested a purpose to repudiate the trust created by the will, and amounted to a renunciation thereof, of which the deed gave notice to the remainderman. From that time until his death Robert Bedford's possession of the land was adverse to the remainderman and all others, and such was the character of the possession of his successors to the legal title down to the time of the institution of appellants' action, a period of more than thirty-eight years.

We are of opinion that appellants' cause of action accrued upon the renunciation of the trust by Robert Bedford, which occurred when he accepted and put to record the deed from the heirs of Bedinger, June 6, 1863. It must be presumed that the recording of the deed gave the appellant Commonwealth of Kentucky notice of the renunciation by Robert Bedford of the trust created by his mother's will, and that his possession of the land was adverse to the remainderman. The appellant, at any time within five years after its discovery of the wrongful conversion by Robert Bedford of the title to the land from a life estate to a fee simple, and not later than ten years after the act, might have sued to correct or

set aside the deed whereby the title was thus changed. Ky. St., sections 2515, 2519. Treadway v. Pharis, 90 Ky., 663, 12 R., 669, 14 S. W., 909, was an action brought by the children and heirs at law of Pharis by his first wife against his second wife and her children by him for a division of his lands fairly, but in such manner as to exclude a tract of 58 acres conveyed the decedent in 1848 by one Tarlton Embry, which they prayed might be adjudged to belong to them to the exclusion of the last wife and her children, because the consideration was paid to Embry out of the estate of their mother under an agreement between her and their father that the deed therefor was to be made to her, but which the father fraudulently and without her knowledge or consent caused to be made to himself. The inquiry was whether the recovery sought was barred by the 30 years' statute of limitation, in passing upon which the court said: "Notwithstanding about forty years elapsed from the execution of that deed to the institution of this action, avoidance of the statute of thirty years was pleaded in the reply upon the ground that their father was tenant by curtesy, and no action to recover the land could have been maintained until his death. But without considering or deciding as to the sufficiency of the reply in that respect, it seems to us that they are barred by section 6, if not by section 2, article 3, c. 71, Gen. St., for, as the ground of relief is the alleged fraud of their father in causing the deed made to himself instead of their mother, they had a cause of action, if ever, upon her death, and, not having sued within five or ten years thereafter, they can not now maintain an action to set aside the deed, which has to be done before they can recover the land. While they could not recover the land during the lifetime of their father, there was nothing to prevent institution of an action to set aside the deed, and thereby change the character of

his claim and possession from that of an absolute ownership to a tenancy by curtesy." Obviously the plaintiffs in the case *supra* could in no event have recovered the land, the title of which had been wrongfully converted by their father, except upon the theory that a court of equity would treat his holding of the title under the circumstances as in trust for the heirs at law of his first wife, subject to his right to the possession and use thereof for life as a tenant by the curtesy. The trust was a constructive or implied trust, created by operation of law. Consequently it did not stop the running of the statutes of limitation, and, though the trustee could not be disturbed in his possession of the land during his life, there was nothing to prevent the heirs at law from maintaining an action before his death, and within the statutory period, to set aside the deed by which he wrongfully took to himself the title; but having failed to avail themselves of this plain and certain remedy, they slept upon their rights until the statute of limitation interposed a complete bar to the enforcement of the trust.

In Packard v. Beaver Valley Land & Mining Co., 96 Ky., 249, 16 R., 451, 28 S. W., 779, which was an action to recover land of the plaintiff that had been sold for taxes and bought by the State, and was thereafter conveyed by deed from the auditor to one Rice, and by the latter by a subsequent deed to the defendant, the plaintiff prayed a cancellation of the deeds and for the recovery of the land. One of the defenses interposed was a plea of the five-years' statute of limitation. The court said: "It can not be doubted that when, by fraud or questionable contrivance or irregularity, the title of the owner of land has been wrested from him and converted to the use of another, he may bring his suit to cancel the conveyance, and it is no obstacle to the obtention of relief that the plaintiff is not in the actual possession of the land. That

fact does not make less real the cloud on his title, and prevent the value of his property from being affected by the obnoxious deed. In such a case, courts of equity will afford relief, or otherwise a wrong would be remediless. Herr, etc., v. Martin, 90 Ky., 379, 12 R., 359, 14 S. W., 356; Nat. Bank of Commerce v. Licking Valley L. & M. Co., 22 S. W., 881, 15 Ky. Law Rep., 211; Kant v. Hall., 23 S. W., 954, 15 Ky. Law Rep., 511, . . . But while the pleas of the defendant, so far as they are founded on the particular statutes invoked (section 16, Auditor's Agent Act 1880, etc. [Gen. St. Ky. Append. p. 1030, c. 92]), are unavailing, the plea in the first paragraph is a general one, and avers the lapse of five years between the procurement of the deeds sought to be canceled and the institution of the action. . . . The limitation in such case is five years, though the cause of action is not deemed to have accrued until the discovery of the fraud or mistake, but in no event can such an action be brought ten years after the act complained of. Sections 2, 6, article 3, c. 71, Gen. St. The presumption is that plaintiff knew of these deeds when they were executed and recorded in the clerk's office; but, whether he did or not, more than ten years have elapsed since their execution and the institution of this action."

In the case of Baseman's Heirs v. Batterton, 1 Dana, 432, the facts are strikingly similar to those of this case. Baseman died possessed of a tract of land which he held by virtue of a bond for the title from Owings, and commissioners appointed by the county court of Bourbon in 1785 made partition of it among five of his children, of whom Catharine Baseman was one. One Hopper afterwards married Catharine, and took possession of the part allotted to her. In 1803 Catharine and her husband united with the others between whom the land had been divided in a suit in equity

against Owings, Baseman's vendor, for a conveyance of the land to them, respectively, according to the stipulations of the title bond given their father, and division as made. Pending the action Catharine died, having first given birth to a child, who survived her several weeks. The suit was abated as to Catharine, and revived in the name of Hopper, heir at law of Francis Hopper, the child, who was the heir at law of Catharine. This was done upon the mistaken idea entertained by the parties and the court that upon the death of the child the father was entitled to her share of the land as heir at law, whereas he was only entitled to the possession and use thereof for life, as tenant by the curtesy, as the legal title went to those who would have inherited from Catharine if she had died without children. A decree was rendered in the action ordering a conveyance by commissioner of the part that had been allotted Catharine to Hopper as heir at law of his child, which was done; the commissioner's deed reciting, as the decree had done, that he was heir at law to the child who was heir at law to the mother. Hopper continued in possession of the part thus conveyed to him until 1807, when he sold and conveyed it to Batterton, who took and thereafter held it in possession. In June, 1827, Hopper died; and soon thereafter Baseman's heirs instituted suit in the nature of a bill of review against Batterton and the heirs of Hopper, alleging the mistake committed in the decree and commissioner's deed to Hopper in conveying him in fee that part of the land allotted to his wife, Catharine, and seeking to recover the land of Batterton, Hopper's vendee. Batterton relied on the undisturbed possession in himself and Hopper of upwards of 20 years before the institution of the suit, and that he was a purchaser for value, without notice of

Commonwealth, &c. v. Clark, &c.

the equity of the complainants. In passing upon and deciding the questions involved, the court said: "The sufficiency of the latter ground of defense (that Batterton was a purchaser for value without notice) need not be inquired into, as we think the first must avail and protect him. It has been attempted to obviate the effect of the lapse of time by asserting that, as Hopper originally took possession in right of his wife, he must have continued to hold after her death as tenant by the curtesy, and as such he and his alienee had a right to hold during his life, and consequently that the limitation would not commence running until after his death. All this might well be conceded, provided there had been no decree and conveyance pursuant to it, purporting to transfer to Hopper the absolute fee. . . . The right to correct the mistake in the decree accrued to Baseman's heirs the instant it was rendered, and it must, on every principle, be held to have been barred before the institution of this suit. Whether, if the application to correct the decree and for the relief now sought had been made against Hopper alone, before the lapse of twenty years, but after the period allowed for bills of review, relief would have been granted, need not now be determined. The case is now presented in a very different attitude from that. Hopper and his alienee held the property upwards of twenty years in undisturbed possession before the institution of this suit. However gross, therefore, may have been the error or mistake committed by the decree in supposing the land had descended to Hopper from his infant child, we think it is entirely too late, on the ground of such error or mistake merely, to disturb a purchaser from Hopper for a full and valuable consideration." In the case *supra* Batterton took the legal title from Hopper, who, though a life tenant, in fact, had the legal title also, and claimed the fee. In

this case the appellees Clark derived the title from Robert Bedford, who, though only entitled to a life estate, also held the legal title to the fee. The heirs of Baseman claimed the land under Catharine Hopper's child, subject to the life estate of Hopper as tenant by the curtesy, while here the land is claimed by the State of Kentucky under Elizabeth M. Bedford, who had an equitable title only, subject to the life estate of Robert Bedford. In the one case the legal title was acquired by Hopper through a mistake, and in the other by Bedford in the same manner. As well said by counsel, the only practical difference in the two cases is in the nature of the prayer of the petition, as in that case the plaintiff recognized the effect of the decree, of the court, and asked that it be set aside, while in this the plaintiff seeks to ignore the decree of the court and the deed to Bedford, and asks that they be treated as void. But in both cases the plaintiffs sue to recover the land. If limitation barred a recovery in Treadway v. Pharis and Baseman's Heirs v. Batterton, *supra* why upon both principle and analogy, should it not do so in this case?

The following additional authorities, which we will not take time to notice in detail, will, we think, sustain the doctrine announced in those already considered: Patrick's Heirs v. Chenault, 6 B. Mon., 315; Edwards v. Woolfolk's Adm'r, 17 B. Mon., 376; Barclay, etc., v. Goodloe's Ex'r. 83 Ky., 500; Black v. Black, 51 S. W., 456, 21 Ky. Law Rep., 403. We think an examination of the cases cited by counsel for appellants will show that they do not conflict with the authorities *supra*. While many of them hold that the cause of action does not accrue to the remainderman until the termination of the life estate, it will be found that they are cases in which the remaindermen had the legal title in remainder, and, being without right of possession during

the life estate, limitation did not commence to run until the life estate ends. Realizing this, counsel for appellant would avoid the rule by insisting that the Bedinger heirs, whose ancestor was Elizabeth M. Bedford's vendor, held the legal title in trust for her, and that in conveying the legal title to Robert Bedford they made him the trustee of the legal title for the benefit of the owner of the equitable interest in remainder. But conceding this to be true, he was not the trustee of an express trust. The trust thus created was merely a constructive trust, and, if the action had been brought in time, his holding would doubtless have been adjudged to have been that of a trustee. But if his holding under the deed from the Bedinger heirs is to be regarded as adverse to the remainderman—and such was manifestly the case—it amounted to a renunciation of the trust; and such adverse holding, if extended by him, and those claiming the land after him, as against the remainderman, so as to cover the time fixed by the statutes of limitation, before the institution of appellant's action, then the action is barred by limitation.

In Tiedeman on Real Property, section 496, it is said: "All the trusts which have been heretofore discussed receive the further appellation of express trusts because they are expressly created by some deed or other instrument of conveyance, and are to be distinguished from those trusts which are explained in the succeeding paragraphs, and which arise by operation of law—for the prevention of injury and the furtherance of justice. Express trusts are created by the express act of the party owning the property. . . . Section 497. Trusts which arise by implication of law are subdivided by the books into implied, resulting, and constructive trusts."

It is well settled that limitation does not run during the

existence of an express trust. But it is equally well settled that it does run during the existence of a constructive trust. In Perry on Trusts (4th Ed.) 865, it is said: "It has been urged that the statute can not apply in favor of persons who become trustees by construction of law, as where a person is construed into a trustee of property fraudulently obtained, or where a trust estate is traced into his hands, or where a resulting trust arises, and that the *cestui que trust* is not precluded in such cases from his remedy by lapse of time. But the later authorities establish the doctrine that the statute applies in such cases. . . . All trusts arising by operation of law, whether implied, resulting, or constructive, are subject to the statute. Where persons claiming in their own right are turned into trustees by implication, the bar will become effective. Equity will refuse to interfere in cases of implied trusts after long acquiescence, not only when time has dimmed the facts, but even where it is perfectly clear that relief would originally have been given."

It seems to be clearly established that Robert Bedford claimed adversely to the remainderman and all others from the time he took the deed from the Bedinger heirs, and such was the possession of his widow and appellees, the Clarks, after his death. Neither the judgment or deed under which Robert Bedford held the land in controversy was or is void. But both might have been avoded at the suit of the remainderman, if brought in proper time. In Wickliffe v. City of Lexington, 11 B. Mon., 161, it is said: "It is argued, however, that in cases of trust there is no limitation, and that the lapse of time does not bar this claim (a land controversy) against the city. This doctrine, however, applies alone to cases where there is a direct, express, and subsisting trust of a purely equitable nature, and not to cases where the

trust which once existed has been violated, and a suit is brought to obtain redress for the injury resulting from the breach of trust." Covington & L. R. R. Co. v. Bowler's Heirs, 9 Bush, 468; Clarke, etc., v. Seay, 51 S. W., 589, 21 Ky. Law Rep., 396; Robinson v. Pierce, etc. (Ala.) 24 South., 984, 45 L. R. A., 66, 72 Am. St. Rep., 160.

It can not be contended that Robert Bedford, in qualifying as executor of his mother's will, undertook to discharge the duties of the trust created thereby. He was not authorized or expected to sell any of the lands of the testatrix, the proceeds of which are directed by the will to be paid to the State of Kentucky for the education of its poor children, for there could be no sale of the lands until the termination of his life estate; that is, until his death without issue. At most, he was only charged with the duty of preserving the property from which the trust fund was ultimately to be raised. In taking to himself the deed from the Bedinger heirs, he converted his interest in the land in controversy from an equitable life estate into a legal title in fee simple, which he had no right to do. He therefore became a constructive trustee, and nothing more, though he did not regard himself as such. Upon the contrary, by his act in thus taking to himself the legal title, and his adverse holding of the land until his death, he threw upon the equitable remainderman the burden and responsibility of taking the necessary steps to have the trust declared, and its rights fixed. This responsibility the remainderman did not accept until its right to sue had been barred by limitation.

We strongly incline to the opinion that appellants' action is barred by the five-years' statute, as in Treadway v. Pharis and Packard v. Beaver Valley Land & M. Co., *supra*; but whether that statute, or section 2522, which provides that

"an action for relief not provided for in this or some other chapter can only be commenced within ten years next after the cause of action accrued," applies, need not be decided. In any event, we are clearly of opinion that as the cause of action accrued in 1863, and this action was not filed until 1902, whatever rights or equities the appellants may have had are barred by the statutes of limitation of 15 and 30 years.

Wherefore the judgment is affirmed.