# Missionary Board of the Brethren Church v. Trustees of the Brethren Church of Lost Creek. Trustees of the Brethren Church of Lost Creek v. Missionary Board of the Brethren Church.

(Decided Nov. 11, 1932.)

A. F. BYRD for appellant.

HENRY L. SPENCER for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming on Plaintiff's appeal, and Reversing on Defendant's appeal.

William E. Drushal and his wife were married in the fall of 1905, and then came to Lost Creek in Breathitt county as home missionaries. In 1906 they interested the missionary board of the Brethren Church, to which they belong, in their work, and on the 18th day of September, 1906, Daniel Cornett and wife conveyed to the missionary board, in consideration of $150 paid by it, 3 acres of land on Lost creek. The deed concludes with the following provision:

"It is agreed and understood between the parties hereto that the said second party is to furnish to

the children of first party, instructions free of cost, until they shall have finished and completed the primary and teacher's courses, taught by the school erected and conducted on said land by second party, or its successors or assigns.''

A schoolhouse and other buildings were erected on the property about the time the deed was made. From that time church services were held in the chapel of the schoolhouse on Sunday, and school was conducted there during the week. Drushal and the other teachers were paid regularly by the missionary board, and all collections taken in the church were sent to the missionary board. On June 7, 1907, a deed correcting a mistake in the boundaries of the 3 acres was made. But it otherwise made no change in the title. On February 4, 1910, in consideration of $200 paid by the board, Cornett and wife conveyed to it an acre more of ground adjacent to the 3 acres first conveyed, and on October 30, 1913, Cornett and wife conveyed to the board, in consideration of $1,900 paid by it, the remainder of the farm, containing in all about 100 acres. Drushal remained in charge of the school, and was also the pastor of the local church, and thus things ran along until about the year 1930, when the state of Kentucky increased the requirements for a high school, and to comply with the additional requirements, it would be necessary for the board to build additional buildings and employ additional teachers. The board did not feel able to do this. It considered its chief work to be the preaching of the gospel, and that the school work should only be subsidiary thereto. The board wished to give up the high school, and some friction developed between them and Drushal. He and his friends went to a meeting of the board, and the matter was there discussed. Finally, after he returned home, he wrote to the board, in substance that, if it would send him two checks each for $250, so that he could finish out the school, he would surrender the property. The checks were sent, but he did not surrender the property. The board then brought a proceeding of forcible detainer against Drushal to obtain possession of the property. When that proceeding was brought, this action was filed on April 2, 1932, by the trustees of the church, who had been elected two months before, to enjoin the board from interfering with the possession of the property. The circuit court

granted the injunction as prayed, and on a motion to discharge the injunction before this court it was continued in force until the case could be prepared and heard on the merits, and it was directed that the case be immediately prepared and heard at the next term of the Breathitt circuit court. Proof was then taken, and on final hearing the circuit court entered a judgment adjudging that the trustees of the Brethren Church of Lost Creek and their successors in office are the owners in fee simple of the tract conveyed September 18, 1906; also the tract conveyed February 4, 1910, and a portion of the third tract conveyed October 30, 1914. These words are added:

> "The above tract includes the campus and all buildings of Riverside Institute, which are, Boy's Dormitory, Chapel and school building, residence, Girl's Dormitory, Gymnasium, light plant, garage, barn, and water supply, all of which is adjudged to the plaintiffs."

It also adjudged them the perpetual right of way of ingress and egress through the remainder of the land, with the perpetual right to use the water tanks and water springs lines, with the right to repair them and to replace them with new tanks and pipes when necessary. From this judgment the missionary board appeals, and the trustees of the local church prosecute a separate appeal.

In all the years since the buildings were erected, Drushal has been the pastor of the local church by appointment of the board, and he has had charge of the property as the agent of the board, which regularly paid him a salary. The board has in this time spent there in all something over $95,000. The buildings have all been put up by the board or by others as a gift to the cause with its consent. While local people helped, they helped to make improvements on the property of the board. The school was maintained until long after the children of Cornett were educated, and he is not a party to the litigation. The local church grew out of the school. Its first trustees were elected when this controversy arose. Drushal, in answer to the question whether the church could get along without the school, said this:

"I believe the church would last but mighty little time to take the school away from it. I believe it, If I did not believe it I would not be here."

The board is willing for the church to worship in the chapel on Sunday but with a pastor named by it, just as it has always done. Section 2353, Kentucky Statutes, is as follows:

"When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person."

It is also provided in section 2515 and section 2543 as follows:

"An action upon a contract not in writing, signed by the party, express or implied, * * * shall be commenced within five years next after the cause of action accrued."

"The provisions of this chapter shall not apply in the case of a continuing and subsisting trust."

The deeds here were taken in the name of the board rightfully, and all persons concurred in the deeds for over twenty years. The rights now claimed by the local church are not expressed in the deeds. When the board establishes, as it proposes to do, an orphanage upon the property, there will still be a school conducted on the property; for orphans must be educated no less than fed. No express trust is shown. Religious services were held on Sunday in the chapel of the school building from the time the school started. But no rights were at any time conferred upon the local congregation as to the possession of the property. This remained all the time in the possession of the board and its duly appointed agents. The worship of the local congregation in the chapel on Sunday was simply permissive, and, as shown above, the existence of the local congregation was by reason of the school. Limitation was aptly pleaded to the claim of the church trustees to the property, and at most nothing more was

shown here than a constructive trust. In Commonwealth v. Clark, 119 Ky. 100, 83 S. W. 100, 105, 26 Ky. Law Rep. 993, 9 L. R. A. (N. S.) 750, the rule is thus stated:

"It is well settled that limitation does not run during the existence of an express trust. But it is equally well settled that it does run during the existence of a constructive trust."

To the same effect see Blakley v. Hanberry, 137 Ky. 283, 125 S. W. 703; Covington, etc., R. Co. v. Bowler, 9 Bush, 468; Rachford v. Lindsay, 3 Ky. Ops. 408.

Reliance is placed by appellees on rule 7 of the board, which is in these words:

"Churches shall be urged and encouraged to assume all pastoral support and other legitimate obligations at the earliest possible moment so as to give relief to the Mission treasury. Help shall be withdrawn as soon as, in the judgment of the Board, the best interests of the work will warrant. Five consecutive years shall be the general limit during which any home mission church may receive appropriations from this Board, and a reduction in the amount of appropriations shall be made each year if conditions will permit."

There is nothing in this rule giving the local church title to the property of the board. It is in fact only intended to make the church self-supporting, and there is nothing in it that would give the local church any right to property belonging to the board.

The fact is that the real cause of the trouble here is that the board and Drushal disagree as to the policy to be pursued. The board wishes to emphasize the preaching of the gospel and to establish an orphanage with a certain fund left to it by another. Drushal wishes to emphasize and maintain the Riverside Institute. The local congregation has properly no place in these questions, though, as Drushal says, its existence is dependent on the existence of the school. What the local people contributed to erect the buildings or other improvements was simply a consideration furnished by them, and under the statute no trusts result therefrom. To sustain a trust here on this ground would be simply

to ignore the statute. On the whole case, the court is satisfied that this conroversy would never have arisen but for Drushal and his desire to hold on to the property which up to that time he had held as the agent of the board.

On the appeal of the missionary board, the judgment is erroneous, and the cause is remanded to the circuit court, with directions to dismiss with costs the petition of the trustees of Lost Creek Church, to dissolve the injunction, and enter a judgment adjudging the property to the missionary board and awarding it a writ of possession therefor; but, as it appears from the record that the school is now in session under the order leaving the injunction in force until the case was heard on the merits, the circuit court may in his discretion fix the date for the issuing of the writ of possession, at such time as under all the facts he deems just, not exceeding sixty days thereafter.

On the appeal of the trustees of Lost Creek Church, the court finds no error in the record; and the judgment is not disturbed thereon, but on the appeal of the missionary board the judgment is reversed, with the directions above indicated.