Cora JOHNSON et al., Appellants,

v.

CHAVIES COAL CO. et al., Appellees.

Cora JOHNSON et al., Appellants,

v.

BLUE GRASS MINING COMPANY
et al., Appellees.

Cora JOHNSON et al., Appellants,

v.

BLUE BIRD MINING COMPANY et al.,
Appellees.

Cora JOHNSON et al., Appellants,

v.

BLACK GOLD COAL COMPANY et al.,
Appellees.

Cora JOHNSON et al., Appellants,

v.

DARB FORK COAL COMPANY et al.,
Appellees.

Court of Appeals of Kentucky.

March 1, 1957.

---

Elwood Rosenbaum, Lexington, for appellants.

Maxwell P. Barret, Hazard, for appellees.

SIMS, Judge.

These five cases were consolidated at the hearing before the trial judge. They were briefed together in this court and all will be disposed of in this opinion.

In the first action, S. B. Johnson, Cora Johnson, Mary Moore and J. E. Johnson were adjudged a lien in the sum of $1,322.-04 "on the entire assets of the Chavies Coal Company wherever found." It was further ordered that the "assets still remaining on the Johnson farm, or a sufficient amount thereof, be sold first, and the proceeds applied to the satisfaction of her (Cora Johnson's) one-fourth interest in this judgment, and also the costs of this action." The remaining four suits were dismissed at Cora Johnson's cost, and she appealed.

For a proper understanding of these consolidated actions, it is necessary to here give certain facts relative to the Johnson family and a brief history of the various coal companies involved in this litigation.

Cora Johnson, J. E. Johnson, Sr., S. B. Johnson and Mary Moore were brothers and sisters and joint owners of a farm located at Chavies in Perry County, which will be referred to as the Johnson farm.

Mary Moore died in 1946, and was survived by two daughters, Malta Little and Otie Farra. J. E. Johnson, Sr., died in 1950 and his widow, Ada Johnson, is his personal representative. J. E. Johnson, Sr., usually went by the name of Joe and among his survivors is a son, J. E. Johnson, Jr. To save time and space we will refer to these men as Joe and Joe, Jr. We will refer to many of the other members of the Johnson family by their given names.

The Chavies Coal Company, the Blue Grass Mining Company, the Blue Bird Mining Company, the Black Gold Mining Company and the Darb Fork Coal Company will be referred to respectively as Chavies, Blue Grass, Blue Bird, Black Gold and Darb Fork. All of these companies were closed corporations with but few stockholders, consisting mostly of Joe and his family. Cora never owned any stock or interest in any of them. As we read the record, Joe formed other corporations interested in the coal mining business, one of which, the Johnson Supply Company, was involved indirectly in these consolidated actions.

On February 1, 1917, the joint owners of the Johnson farm leased to the Coneva Coal Corporation for a term of 99 years the mining rights in the farm, reserving to themselves the privilege of cultivating the land. The lessors were to receive a royalty of eight cents per ton but for the third and successive years the lessee guaranteed to them a minimum royalty of $2,000 per year, with a lien reserved to lessors on the lease-hold and equipment to secure the payment of all royalties. The lease further provides that "if it shall become permanently impossible with due diligence and capital to carry on said mining operations on said tract of land with profit," the lessee could surrender the lease on thirty days' notice.

Coneva mined this property until 1930 when it got into financial difficulties and Joe, who was a lawyer, forced it into receivership. Cora testified Joe was not act--

ing as her attorney in putting Coneva into receivership. The assets of Coneva were appraised at $2,500 and were bid in at the receiver's sale for $2,000 by Joe, Jr., who transferred them to his father as trustee. The Chavies Coal Company was then organized by Joe and it took over the assets of Coneva which had been transferred to Joe by his son. Chavies bid in $2,300 of equipment at a court sale of the Jackson Block Coal Company's assets. Joe was surety on Chavies' note when it purchased this equipment. Some of this Jackson Block Coal Company's equipment was used in the Chavies mine.

Chavies was operated until 1936, but it lost money and ceased operation that year. The record shows that coal could no longer be mined at a profit by Chavies, and the trial judge so held. The mine and its equipment lay dormant until 1939 when the joint owners of the Johnson farm forced it into receivership, and T. C. Johnson was appointed receiver for Chavies on May 11, 1939, with his bond fixed at $500. Cora also testified Joe did not represent her in this receivership action. It is worthy of note that the receiver did not file a report until December 5, 1951, which was after Cora brought suit to recover her alleged one-fourth interest in the equipment and one-fourth of the reasonable rental value for the use of same. In this receivership action the joint lessors sought to recover from Chavies $1,322 earned royalties, and $6,000 minimum royalties provided for in the lease. This action lay dormant on the docket from 1939 to 1951 without complaint by Cora or any other of the lessors until these present actions were started.

The receiver was unable to operate the mine or to sell the equipment and he seems to have done but little to protect the assets of Chavies. With the knowledge and consent of the lessors he appears to have let Joe take charge of these assets as his individual property. Cora lived in Lexington some 25 years prior to the institution of these actions and while she testified she never constituted Joe her agent to act for her in the coal business from the time the Johnson farm was leased to Coneva in 1917 until his death in 1950, yet she left everything to Joe and S. B. Johnson, her two brothers, and never questioned their actions until she started these suits. While Cora denied she knew of Joe taking over the assets of Chavies, the record convinces us, as it did the trial judge, that she did know it and tacitly approved his action.

The assets of Chavies consisted chiefly of mining equipment which was old, run-down and in need of repairs and was of very little value according to the testimony of appellees. However, the testimony of appellants puts values on it ranging from a monthly rental of $1,500 to a gross value of all equipment at $300,000. Joe used in his other mines such of this equipment as was serviceable and left the rest of it in the Chavies mine. It is not denied that he settled a $15,000 claim against one of his companies by transferring a 10-ton motor to the claimant. But Joe, Jr., testified the motor was valued greatly in excess of its real worth and that it was one of the few pieces of equipment taken by Joe from the Chavies mine that was of much value.

On July 10, 1951, Cora brought an action against Blue Grass in which her complaint averred she has been the owner of one-fourth of the equipment used in its mine since April 1, 1946, and the rental value of this equipment was $200 a month, making her interest in same $50 a month, and she asked recovery of $5,100. In a second amended complaint she attempted to make the receiver, Joe's executrix and the other joint owners of the Johnson farm parties defendant and she asked that they be required to answer and set up their interest in this equipment. For some reason which we do not understand, the trial judge refused to permit them to be made parties, but Cora took no exception to this ruling. Furthermore, Cora's various pleadings asked no relief against the receiver, the executrix or S. B. Johnson, hence she is in no position to complain about the ruling of the trial court in the matter. Cora

likewise filed similar suits against Chavies, Blue Bird, Black Gold and Darb Fork in which she sought to recover $50,000. Cora averred her interest in this equipment arose by operation of law and by oral agreement of the parties.

The joint answer of the several appellees was a general denial followed by a plea of the five and the ten year statutes of limitation. On the issues joined more than 500 pages of proof was taken and the trial judge delivered a well reasoned and exhaustive opinion, reaching the conclusion heretofore stated.

 Cora was not a stockholder in Coneva or in Chavies and the only claim she ever had to the assets of either of these companies arose by virtue of her being one of the four joint owners of the Johnson farm which was leased first to Coneva and then to Chavies. In 1939 Chavies was forced into receivership and it is not disputed that Joe took possession of its equipment in 1939 or 1940. As Cora did not bring these actions to recover her interest in the equipment until 1951, her claim was barred by the five year statute of limitation. KRS 413.120(6). However, she argues the statute does not apply because Joe purchased the equipment at the receiver's sale, and as he brought the receivership suit for himself and other joint owners of the Johnson farm, the law impressed a trust on this equipment for Joe's clients, citing Phillips v. Phillips' Adm'r, 80 S.W. 826, 26 Ky.Law Rep. 145. She correctly argues the statutes of limitation will not run against an express trust, citing Missionary Board of the Brethren Church v. Trustees of the Brethren Church of Lost Creek, 247 Ky. 398, 57 S.W.2d 25; Gabbard v. Gabbard, 294 Ky. 572, 172 S.W. 2d 214.

 There are two answers to the contention made by Cora. First, she testified Joe did not represent her in the receivership suits, therefore any property he bought was not held by him in trust for her. Second, this could not be an ex-

press trust, but at most it could be only a trust created by equity; 89 C.J.S., Trusts, § 139, p. 1015, and the statutes of limitation run against a constructive trust. Commonwealth v. Clark, 119 Ky. 85, 83 S.W. 100, 105, 26 Ky.Law Rep. 993, 9 L.R.A., N.S., 750; Blakley v. Hanberry, 137 Ky. 283, 125 S.W. 703.

 Cora argues that as Joe, Jr., transferred this equipment to his father as trustee, this fact shows Joe, Sr., took the property in trust for the four joint owners of the Johnson farm. Really, the word "trustee" appearing after Joe's name is nothing more than descriptio personae. 26-A C.J.S., Descriptio, p. 859. At most, this transfer to Joe as trustee could be but a naked or dry trust, 89 C.J.S., Trusts, § 3, p. 716, as there were no active duties to be performed by Joe. Blackburn v. Blackburn, 167 Ky. 113, 180 S.W. 48.

 The record shows that monthly payments by checks of $50 each were made by Blue Grass, Black Gold and Darb Fork to Mary Moore and S. B. Johnson, which checks show they were for "rental on mining equipment." These checks continued for a period of three or four years. Cora never received any payments as rental on the equipment and argues that as her brother and sister received them, she was entitled to her part of this rental. Appellees' answer to this argument is that the testimony shows Joe wanted his brother and sisters to have an income and he arbitrarily gave them this monthly rental and that during the same period he gave Cora an income from the commissary, known as the Johnson Supply Company, which aggregated $11,750. When the commissary ceased making money, Joe gave Cora from 1946 to 1951, checks aggregating $2,550. Cora had no investment in the commissary and in reality the $11,750 she received from it, along with the $2,550, was just a gift to her by Joe. Likewise, the payments to Mary Moore and S. B. Johnson were gifts by Joe although he called them "rents on mining equipment."

Joe used this equipment as his own for twelve years without complaint from the other joint owners of the farm and in turn he gave them just what he pleased. It is too late for Cora to complain now as the statutes of limitation have run against any claim she might have. KRS 413.120(6).

The trial judge held there was no minimum royalty due by Chavies, but he found that Chavies owed $1,322.04 royalty on production and adjudged Cora a lien on Chavies' equipment wherever found. He further ordered the assets remaining on the Johnson farm should be first subjected to Cora's lien of $330.51, and dismissed at her cost the suits against the other companies. As the trial court sustained appellees' plea of the five year statute of limitation in all the cases except the one involving Chavies, we are unable to understand why he did not apply limitation to the Chavies action since Cora waited twelve years to assert her lien against Chavies. However, there is no cross-appeal, hence the entire judgment is affirmed.

Judgment affirmed.