SHIRLEY *v.* SHIRLEY *et al.*

(*Jackson*, April Term, 1944.)

Opinion filed June 10, 1944.

R. D. DeFord, of Savannah, for plaintiff in error.

R. R. Haggard, of Waynesboro, for defendants in error.

Mr. Justice Chambliss delivered the opinion of the Court.

Complainant, executor of the will of his father, E. C. Shirley, seeks a declaratory judgment touching the rights of the widow of E. C. Shirley under his will. Complainant is the son by a former marriage. Following the probate of the will the widow gave notice of her dissent. Her right to do so is contested, it being insisted that she is precluded from exercising this election by her written agreement "not to dissent from said will or make any question or contest thereof," executed by her on the 10th day of September, 1934, eight years before the death of E. C. Shirley on the 2nd of August, 1942.

The Chancellor and the Court of Appeals concurred in holding that this agreement was without adequate consideration and that she was not sufficiently informed or advised as to her rights in the premises; that as the wife

she stood in a fiduciary relationship which required from the husband a fuller disclosure to her of the value of his property and of her legal rights. In concluding its opinion the Court of Appeals says:

"We do not say that a wife could not under any circumstances waive her right to dissent from the will, but we do think that before such a waiver can be regarded in equity as being valid, it must affirmatively appear that it was done voluntarily and upon a full understanding of what she was doing and a full knowledge of her rights in the premises. . . .

"As to the contention that during the husband's lifetime the wife should have made an independent investigation to find out what her rights were, and having found out asserted them, we think that to hold this to have been necessary would be an unsound policy. There could hardly be anything better calculated to promote domestic discord and disrupt the marital relationship than for the wife to have pursued that course."

Petitioner to this Court insists that since the enactment of our statutes removing the disabilities of married women and enlarging their rights to contract, it was competent for her to enter into this agreement, or stipulation; that the undisputed facts developed in the testimony show that she had full knowledge and appreciation of the value of her husband's estate and was afforded ample time and opportunity to obtain all relevant information as to her rights, and she acted only after due consideration and upon advice, and she is now, after a lapse of eight years, and the death of her husband, estopped to repudiate this agreement.

In the view we take, it becomes unnecessary to discuss the facts and findings of the lower courts in this particular case, since this Court has reached the conclusion, for

reasons to be stated, that the decrees of the Chancellor and Court of Appeals should be affirmed upon grounds broader and of more general application and more conclusive than those announced.

The sacredness of the marital relation, its essential value to society and the need for its protection and fostering, is a well established fundamental of public policy, and it is with this and other considerations in mind that this court has determined to refuse to recognize power in a married woman to waive before the death of the husband her right, secured by common and statutory law, to dissent from her husband's will, whatever the circumstances or considerations. We are in hearty accord with this well expressed statement in the opinion of the Court of Appeals, which directly supports our conclusion: "There could hardly be anything better calculated to promote domestic discord and disrupt the marital relationship than for the wife to have pursued that course," that is, met a demand from her husband that she execute such a waiver by an assertion of her legal rights and a disregard of his wishes.

This Court has expressly recognized the principle of the protecting applicability of public policy against the invasion of provisions for the widow. In the recent case of *McAdams* v. *McAdams*, 177 Tenn., 67, at page 74, 146 S. W. (2d), 140, at page 143, the Court was discussing the validity of a prenuptial contract,—obviously freer from objection that one entered into after marriage and during coverture,—and there said:

"Regardless, however, of the language of the contract, it is against the policy of the law for exemptions to be waived. The head of a family himself is not permitted to waive his exemptions by executory contract or otherwise. *Mills* v. *Bennett*, 94 Tenn., 651, 30 S. W., 748, 45

Am. St. Rep., 763; *Denny* v. *White*, 42 Tenn. (2 Cold.), 283, 88 Am. Dec., 596.

"Certainly the law would throw around a widow the same protection that covered her husband during his lifetime. No more than he should she be deprived of the protection of the statutes.

"As for the year's support, as pointed out in *Crenshaw* v. *Moore*, *supra* [124 Tenn., 528 137 S. W., 924, 34 L. R. A. (N. S.), 1161, Ann. Cas., 1913A, 165], that is but an extension for one year after his death of the husband's duty to provide for his wife. Such a duty is placed upon him by the common law and by statute. Code, sec. 11370. The husband cannot escape this duty nor in general can the wife waive this right by contract. 26 Am. Jur., 935; 30 C. J., 517."

Thus the Court declared that a contract to waive homestead and year's support exemptions, even if entered into before marriage, would be void as against public policy. The case of *Mills* v. *Bennett*, 94 Tenn., 651, 30 S. W., 748, 45 Am. St. Rep., 763, cited in the *McAdams Case*, while not dealing directly with the rights of the widow, is applicable in principle, holding that, to quote the headnote:

"A person contracting a debt cannot, by a contemporaneous and simple waiver of benefit of the exemption laws, confer upon his creditor the right, upon obtaining judgment for his debt, to levy his execution, over the debtor's objection, upon exempt property. Such agreement is contrary to public policy and void.

Mr. Justice MCALISTER, writing that opinion, reviews and quotes from numerous authorities, among other expressions these words directly applicable to the case now before us:

" 'Laws enacted from considerations of public concern, and to subserve the general welfare, cannot be abrogated by mere private agreement.' *Recht* v. *Kelly*, 82 Ill., 147 [25 Am. Rep., 301]."

Again, this is quoted from another high authority:

" 'It was against the consequences of this overconfidence and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort that the legislature has undertaken to interpose. . . . The law was designed to protect him against his own improvidence in giving such consent. The statutes contain many examples of legislation based upon the same motives. The laws against usury, those which forbid imprisonment for debt, and those which allow a redemption after the sale of land on execution are of this class.' *Kneetle* v. *Newcomb*, 22 N. Y., 249 [78 Am. Dec., 186]."

Just as the statutes referred to were enacted "from considerations of public concern, and to subserve the general welfare," so were the provisions reserving to the widow the right to dissent from the husband's will, and reasons of public policy for holding void waivers apply alike.

It will be borne in mind that the public welfare and the good of society are involved. In *Black Diamond Coal Mining Co.* v. *Rankin*, 170 Tenn., 651, at page 654, 98 S. W. (2d), 311, at page 312, we quoted with approval the following:

" 'A waiver is not, however, allowed to be operative where it would infringe upon the rights of others, or would be against public policy or morals. Where the object of a law is the good of the public as well as of the individual, such protection to the state cannot, at will, be

waived by any individual, an integral part thereof. The fact that the individual is willing to waive his protection cannot avail. The public good is entitled to protection and consideration; and if, in order to effectuate the object, there must be enforced protection to the individual, such individual must submit to good. . . .' 27 R. C. L., p. 906, par. 3 and 4.''

█ Moreover, upon a careful consideration of the history and terms and manifest purposes of our statutes (Code sections 8358-8364) reserving to married women this right of dissent, it seems manifest that it was intended to confer a right of election to be exercised after death only, and not before. It is commonly not until then that the wife is in a position to exercise this election with full appreciation of her requirements, the values involved, and freed from that dominating marital relation and association, whether springing from awe or affection, which is inherent until death severs the ties. This view finds support in the language of the statute, reading:

''A widow may dissent from her husband's will:

''(1) Where a satisfactory provision in real or personal estate is not made for her; in which case she shall, in writing, signify her dissent in open court, to be entered of record, within one year after the probate of the will.

''(2) Where a provision in personal estate is made for her, but the whole of the husband's property, including the bequest, is taken for the payment of his debts; in which case, without any formal dissent, she may sue for her dower.''

Neither of these conditions could arise, or be presented for her consideration and the exercise of her election, *until after the death of the husband.*

█ This principle of prematurity in the exercise of the right of waiver finds support by analogy, to use one il-

lustration, in the holdings of this and other courts denying the enforceability of waivers made before default by the purchaser of the public sale provided by our conditional sales act. Code section 7287. In *Russell* v. *Clinton Motor Co.*, 147 Tenn., 57, at page 60, 245 S. W., 529, at page 530, followed in later cases, it was said:

"It was held by this court that there could be no waiver of the public sale required by our Conditional Sales Act (Thompson's-Shannon's Code, sec. 3666 *et seq.*) before default was made by the purchaser and before the seller regained possession.

" 'The waiver or agreement contemplated by the act cannot be made before default and reclamation.' *Lethe Miner* v. *I. Jackson & R. Dorman Co.* (Mss. 1895, Nashville).

"This case was later approved, and it was said by the court: 'Until such contingency happened there could be no occasion for a waiver.' *Massillon Engine, etc., Co.* v. *Wilkes* (Tenn.), 82 S. W., 316."

This is in part an application of another phase of the familiar rule that, unless there be a present right, there can be no waiver. Many authorities are cited in 27 R. C. L., at page 908, for the rule that, "to constitute a waiver . . . it is essential that there be an existing right, benefit, or advantage." Mrs. Shirley had no accrued legal right of election whether or not she would take under her husband's will until the event, the death of the husband, which gave rise to the right, had taken place.

So that, on this ground and in application of what we conceive to be sound public policy which upholds and sustains the marital relationship and protects the home, so vital to our civilization, we declare that no waiver can be bindingly made during coverture, before per-

manent separation, by death or otherwise; that not until then does the right to exercise the election provided by statute arise.

The decree of the Court of Appeals is affirmed.

GREEN, C. J., and NEIL, PREWITT, and GAILOR, JJ., concur.