CHURCH OF CHRIST HOME FOR AGED, INC., *et al. v.*
NASHVILLE TRUST CO.

(*Nashville,* December Term, 1946.)

Opinion filed May 3, 1947.

Rehearing denied May 31, 1947.

GARNETT S. ANDREWS, of Nashville, for complainant, Church of Christ Home For Aged, Inc., and Tipton Orphans' Home, Inc.

ALBERT WILLIAMS, JOE BROWN CUMMINGS, and KENNETH HARWELL, all of Nashville, for defendants Mamie Hanson, Hazel Hanson, C. A. Kennedy, Ex'r.

ANDREW EWING, of Nashville, for defendant Nashville Trust Co.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainants filed their original bill in the Chancery Court in Nashville, seeking specific performance of an agreement between A. Z. Hughes and wife, Lillie Green

Hughes, to execute wills leaving the remainder of their property to complainants upon the death of the survivor. The wills of each are identical and were executed on the same date, August 17, 1933, at the same place, and with the same subscribing witnesses. Following a bequest of five dollars each to the other, each testator in his and her will provided ''that all the rest and residue of my property of whatever kind and wherever situated'' is given to the Nashville Trust Company to be held in trust with broad powers to manage the property and pay the income to the survivor. It is then provided that upon the death of the survivor ''said trust property shall be divided equally between the Church of Christ Home for the Aged located on Eastland Avenue in Nashville, Tennessee, and the Tipton Orphans Home located at Tipton, Oklahoma, to be theirs absolutely.''

The testator, A. Z. Hughes, predeceased his wife and his will was duly probated on October 25, 1935, by the Nashville Trust Company as executor. On February 4, 1936, Mrs. Hughes dissented from her husband's will and petitioned the County Court of Davidson County for a year's support. She was allowed nine hundred dollars for this purpose and the entire personal estate of A. Z. Hughes was consumed in paying this amount in addition to the payment of other lawful claims, fees, and expenses of administration. The executor made its report in June, 1937, and was discharged and relieved from any further liability in connection with the estate.

In the spring of 1942, Mrs. Hughes fell and injured herself at her home on Caldwell Lane. She was taken to a local hospital for treatment and in a few days thereafter was removed to a hospital in Columbia, Tennessee, where she remained about six days. Upon the advice of her doctor, she was moved to the home of her sister, Mrs.

Mamie Hanson, and within a very short time she passed away.

While Mrs. Hughes was in the hospital at Columbia, she sent word to Mr. C. A. Kennedy, a reputable attorney, to come to see her, stating that she wanted to make a will and wind up her affairs, and a will was prepared by Mr. Kennedy in which all her property was given to her sister, Mrs. Mamie Hanson, and her nephew, Hazel Hanson, including the real estate on Caldwell Lane in Nashville, and C. A. Kennedy was named executor. This will was signed "Lillie B. Hughes," the testatrix making her mark, which was witnessed by H. P. Gardner, C. A. Kennedy, and Iris McClain. As above stated, Mrs. Hughes' correct name is Lillie Green Hughes. The will was probated on May 18, 1942.

The defendants, C. A. Kennedy, Executor, etc., Mamie Hanson and Hazel Hanson, filed a joint and separate answer to the original bill, in which they deny that A. Z. Hughes and wife "entered into any contract or agreement to make mutual or reciprocal wills, or entered into any contract or agreement to dispose of their property by will so as to endow the complainants." The answer further avers that if any such contract was entered into it was later terminated and abandoned by the parties. They further plead the statute of limitations, averring that the breach of the alleged contract occurred more than six years before the filing of the bill and that complainants' action is barred by Code section 8600.

The Nashville Trust Company filed a formal answer admitting the death of A. Z. Hughes and that "it probated his will as Executor thereof." It averred that upon learning of the death of Mrs. Hughes and the probating of her will executed on May 18, 1942, it presented and filed with the County Court the will of Mrs. Hughes dated Au-

gust 17, 1933, in which it was named trustee and executor. The defendant did not qualify as executor and trustee under the will of Mrs. Hughes dated August 17, 1933.

The cause was heard by the Chancellor, who found that ''A. Z. Hughes and wife, Lillie Green Hughes, mutually agreed to endow the complainants, Church of Christ Home for the Aged and Tipton Orphans Home, with the remainder of their joint estates upon the death of the survivor, and that in accordance with their agreement, said parties did, on August 17, 1933, execute companion wills effectuating their agreement, both wills being dated the same day and witnessed by the same witnesses.'' The Court decreed that the complainants were entitled to all the property of Mrs. Hughes after a full satisfaction of all debts and obligations.

The defendants prayed and were granted an appeal to the Court of Appeals and that Court concurred in the finding of facts and decree of the Chancellor.

A petition for *certiorari* was seasonably filed in this Court, which was granted, complaining (1) of error of the Court of Appeals in holding Mr. and Mrs. Hughes had entered into a binding contract to execute mutual or reciprocal wills, because there was no evidence of such agreement; (2) that it was error to hold ''that Mrs. Hughes had a right to dissent from her husband's will and that such dissent was not a repudiation of the contract.'' Petitioners contend that this holding was erroneous because ''if there was a binding agreement, Mrs. Hughes did not have the right to dissent . . . and such dissent was a breach or repudiation of said contract and commenced the running of the statute of limitations,'' and is in conflict with *Seat* v. *Seat*, 172 Tenn. 618, 113 S. W. (2d) 751.

When *certiorari* was granted, counsel were directed in a *per curiam* memorandum to discuss (1) the right of Mrs. Hughes to dissent from her husband's will, and (2) whether or not complainants' suit was barred by the statute of limitations as provided in Code section 8600.

The concurrent finding by the Chancellor and Court of Appeals that the parties (Mr. and Mrs. Hughes) had entered into an agreement to execute, and did execute, companion wills which in legal effect endowed the complainants with their joint estates, following the termination of a life estate therein in the survivor, is not open for consideration by this Court. Petitioners contend, however, that there is no evidence to support the concurrent finding and that the Court of Appeals based its conclusion solely upon the language in the companion wills, which was error. While there are many cases holding that a contract to execute mutual wills cannot be determined alone by the contents of the wills, especially where there is no reference in said wills to such a contract, there are cases where the mutual or reciprocal wills in and of themselves furnish ample evidence of such a contract. In *Harris* v. *Morgan,* 157 Tenn. 140, 7 S. W. (2d) 53, the Court gave due consideration to the contents of four mutual wills as proof of the agreement, as shown by the following comment (at page 154 of 157 Tenn., at page 57 of 7 S. W. (2d): "The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of the survivor among the same persons, *negative any conclusion but that they were executed pursuant to a joint compact or agreement,* and that each was executed in consideration of the execution of the other three. No parol evidence would, therefore, be necessary to establish the fact of the compact or agreement." (Italics ours.)

Where, as in the instant case, the wills are identical in language, witnessed by the same persons, at the same time and place, and the contracting parties are husband and wife, it is well nigh conclusive that such wills were executed in accordance with their mutual contract to dispose of their property in this manner.

"Courts have frequently held that a pre-existing contract to make mutual and reciprocal wills may be conclusively inferred from the provisions of the wills themselves (especially if they be joint), in the light of circumstances existing at the time the wills were executed." *Doyle* v. *Fischer,* 183 Wis. 599, 198 N. W. 763, 766, 33 A. L. R. 733, citing cases from Illinois, New York, Michigan, Missouri, Iowa and Texas.

■ The important question arising from the binding effect of the contract is the right of either of the contracting parties to revoke his or her will. The authorities are abundant to the effect that the *contract* is irrevocable and that a party in interest may enforce it by compelling specific performance in a court of equity. *Harris* v. *Morgan, supra.*

In *Phillip* v. *Phillip,* 96 Misc. 471, 160 N. Y. S. 624, it was held, "Mutual wills, made pursuant to an agreement devising the life use of real estate to the survivor, with a remainder over to a third person, are irrevocable after the death of one of the parties," citing Century Digest, sections 169, 170.

■ It cannot be doubted that either party to the agreement, while both are still alive, may recede therefrom and make a different disposition of his property on giving proper notice of his act in doing so. See note number 73, 69 C. J., sec. 2724, p. 1302; *Sage* v. *Sage,* 230 Mich. 477, 203 N. W. 90.

In *Seat* v. *Seat*, 172 Tenn. 618, 113 S. W. (2d) 751, it was held that where husband and wife execute a joint will leaving all their property to the survivor for life and then one half to the husband's heirs and one half to the wife's brother and sister, and the will was not revoked before the husband died, the wife could not repudiate the contract and defeat the interest of her husband's heirs by dissenting from the will. The contract between Mr. and Mrs. Seat was held to be irrevocable, the result being that the parties in interest (heirs of Mr. Seat) were granted relief by enforcing specific performance of the contract in accordance with the provisions of the will. It will be noted further that Mrs. Seat repudiated the contract by resigning as executrix and dissenting from the will.

The statement found in a number of cases, that the will or devise is irrevocable by the surviving testator, while true in fact in many cases, is technically incorrect, since all wills are ambulatory and subject to revocation. It is the contract or agreement that is irrevocable, not the will. The distinction, however, is so highly technical that it is a waste of time and effort to discuss it. The contract and the will, or wills are so completely dependent upon each other that, whether we speak of one or the other as being "irrevocable", the result is the same. This result appears in *Harris* v. *Morgan, supra, Phillip* v. *Phillip, supra,* and *Prince* v. *Prince,* 64 Wash. 552, 117 P. 255, and other cases. There is no uniformity, however in this regard as the result often depends upon the agreement between the parties. See *Trustees of Reformed Church, etc.* v. *Wise, Executor,* note to 69 C. J., sec. 2726, p. 1302, and other cases.

The contract cannot be adjudged unenforceable on the ground that the widow is thereby deprived of her lawful right to dissent from her husband's will. The argu-

ment in support of this contention is unsound because it is a joint or reciprocal will in which the property of both is disposed of, each taking all for life and the remainder to complainants.

The case of *Shirley* v. *Shirley*, 181 Tenn. 364, 181 S. W. (2d) 346, is not applicable to the instant case. In that case the husband had concealed from his wife the true value of his estate at the time she signed a waiver of the right to dissent. It was pointed out that the agreement was "without adequate consideration and she was not sufficiently informed or advised as to her rights in the premises."

The question of the right of the widow to dissent from a mutual or reciprocal will, where adequate provision is made for her, is not made; nor do we find the question decided in any of our cases.

In *Baker* v. *Syfritt*, 147 Iowa 49, 125 N. W. 998, 999, there is an exhaustive review of the authorities touching the rights of revocation in the case of mutual wills; and also as to the interests of beneficiaries, heirs, or devisees. It was said (at page 61 of 147 Iowa, at page 1002 of 125 N. W.) : "Coming a step nearer to the case in hand we see no good reason why husband and wife may not agree to unite their separate estates in the creation of a trust for the benefit of a third person, who shall come into legal title and right of possession upon the death of the survivor. If to that end they execute a joint instrument, clearly expressing their purpose, then, whether it be called a contract, compact, will, or conveyance, we think it should be treated as a relinquishment of dower right, or, at worst, when the maker has died without attempting to revoke it, the other should be held estopped to set up any right which tends in whole or in part to the defeat of the common purpose. A contract is none the less a con-

tract because it contains provisions which are testamentary in character, nor is a will any less a will, if properly executed, because it embodies contractual features. *Carmichael* v. *Carmichael*, 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528; *Schneringer* v. *Schneringer*, 81 Neb. 661, 116 N. W. 491.'' See also *Prince* v. *Prince*, 64 Wash. 552, 117 P. 255, 258.

We think the holding of this Court in *Seat* v. *Seat*, *supra*, is in conformity with the authority above cited. This assignment is overruled.

█ The petitioners next insist that the act of Mrs. Hughes in dissenting from her husband's will ''constituted a complete renunciation of her rights under her husband's will and a breach of contract and agreement,'' that complainants' right of action to recover the property accrued at that time, thus causing the statute of limitatations to commence to run. Petitioners contend that the Chancellor and Court of Appeals erred in not holding that the complainants' suit was barred by Code section 8600, which provides: ''. . . actions on contracts not otherwise expressly provided for, shall be commenced within six years after the cause of action accrued.''

The respondents (complainants) reply by saying that their right of action to compel a distribution of the remainder interest did not accrue until the death of Mrs. Hughes. *Alvis* v. *Oglesby*, 87 Tenn. 172, 10 S. W. 313.

It is the contention of respondents ''that the six year statute of limitation would not bar the cause of action set up in the instant case, for the reason that the agreement entered into between Mr. and Mrs .Hughes, which is set forth in their companion wills, created an express trust between the parties for the benefit of the respondents, and the six year statute . . . does not apply to such an express trust,'' citing *Jackson* v. *Dobbs*, 154 Tenn. 602,

290 S. W. 402; *Lafferty* v. *Turley*, 35 Tenn. 157, 173; 65 C. J. 220, sec. 62, p. 280.

The two cases cited are not applicable to the instant case. In *Jackson* v. *Dobbs*, suit was brought by a son to recover from his mother his distributive share of a fund which she received by way of compromise for the wrongful death of her husband and his father. The plaintiff insisted that his mother held the fund in trust and he was entitled to one half of it. The suit was brought more than six years after the settlement. The Court held that the six year statute of limitations applied.

In *Lafferty* v. *Turley, supra,* it was held: "A personal representative is an express trustee, and no statute of limitations, either general or special, or analogous bar, will protect him against a proceeding to recover legacies or distributive shares due from him as such. (Acc. *Taylor* v. *Walker,* 48 Tenn. 734, 740, and *Carr* v. *Lowe's Ex'rs,* 54 Tenn. 84, 98 both citing this case.)"

The text in 65 C. J., above cited, relates to the right of a *cestui que trust* to property.

"'Trusts against which the statute of limitations does not run are those technical and continuing trusts which are not cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of courts of chancery, while trusts which are the ground of an action at law are subject to the operation of the statute." 34 Am. Jur., Trusts, Sec. 107, p. 86.

The principle of law thus invoked by respondents is not applicable here for the reason that the complainants, *cestui que trustent,* are not seeking any affirmative relief against the trustee under the mutual wills of the testators. The effect of Mrs. Hughes' dissenting from the will was to repudiate the trust. Moreover, the action of the County Court in directing the payments to her of a

year's allowance and other expenses incident to administration of the estate of her deceased husband, effectually terminated the trust and was notice to the *cestui que trustent* of such termination. As further evidence of the fact that the trust created by the joint wills came to an end as a result of Mrs. Hughes' dissent, it is conceded that the executor-trustee made its report to the County Court and was discharged and relieved from any further liability in connection with the estate. It conclusively appears from the answer of Nashville Trust Company, Executor-Trustee, etc., which is not denied, that, as a result of Mrs. Hughes' dissent from Mr. Hughes' will; and the payment to her of a year's support, no assets of the estate of A. Z. Hughes came into the hands of the trustee. The said Nashville Trust Company never qualified as executor or trustee of the estate of Mrs. Hughes.

It is true that, by the terms of the trust as found in the mutual wills, the joint estate of Mr. and Mrs. Hughes was to remain in the hands of the trustee to be used by the trustee for the sole benefit of the survivor. The complainants could not claim anything until the death of the survivor. Conceding as we do that the complainants were thus precluded from calling upon the trustee for a distribution of the estate, this is not determinative of the question as to when their right of action accrued. They were the beneficiaries of the contract and their right to sue for a breach thereof accrued the moment Mrs. Hughes by her act of dissent and application for a year's support gave notice that she would treat the agreement and mutual wills as a nullity.

We pretermit the question of the right of complainants as innocent third parties to the contract to sue, inasmuch as we are constrained to hold that the six year statute of limitations is applicable and the present suit is

barred. It is elementary that a breach of contract gives rise to a cause of action by the aggrieved party. The statute of limitations begins to run as of the date of the breach. It is also a well recognized rule that a cause of action arises when the acts and conduct of one party evince an intention no longer to be bound by the contract. In *Brady* v. *Oliver*, 125 Tenn. 595, 147 S. W. 1135, 41 L. R. A., (N. S.) 60, Ann Cas. 1913C, 376, it was held: ''Where one party to a contract announces in advance his intention not to perform it, the other party thereto may treat the contract as broken, and sue at once for the breach, without waiting for the time fixed for performance.'' Mr. Justice LANSDEN cites authorities from a number of jurisdictions in support of this holding, including several English cases.

▮ We think there was an affirmative breach of the agreement by the action of Mrs. Hughes in dissenting from her husband's will and petitioning the County Court for a year's· support. The result is that the complainant's right of action then accrued and, since the bill was not filed within six·years from that time, it is barred by the Statute of Limitations.

This assignment is sustained and the bill is accordingly dismissed.

### ON MOTION FOR REHEARING

The Church of Christ Home for the Aged, and other beneficiaries, have filed their petition to rehear, complaining that the Court committed error in holding that their suit was barred by the statute of limitations; that it was also error to hold that Mrs. Hughes' dissent from her husband's will and receipt of a year's support ''was notice that she would treat her agreement with her husband to

endow the complainants with the remainder of her estate at her death and their mutual wills 'as a nullity', and that complainant's right to sue for such breach accrued the moment Mrs. Hughes dissented.'' Counsel for petitioners argue that the effect of the opinion "will affect radical changes in the laws governing the duties and liabilities of executors, administrators and trustees, and in many instances will destroy the title of beneficiaries of trust estates, especially remaindermen,'' etc.

This is an erroneous view. The duties and obligations of executors and administrators are not involved in the instant case. Counsel argue the foregoing question as if Mrs. Hughes acquired an interest in her husband's estate by virtue of the execution of the mutual wills, and that she held it in trust for the remaindermen. As a matter of fact, she took nothing under his will. Mr. Hughes had deeded her his real estate sometime before his death; his entire personal estate was exhausted in paying his funeral expenses and a year's support to the widow. Since she took nothing under the will, she held nothing in trust for anybody. If it is contended she was a trustee of all the property by virtue of the contract to make the reciprocal wills, the reply is, she repudiated the contract by dissenting from her husband's will. When she renounced all property rights which may have accrued to her by virtue of the mutual agreement, she thereby repudiated the trust.

We have held that the contract between Mr. and Mrs. Hughes was valid. Having survived her husband, she had the right to all the property for her own use for life, and whatever she did not consume she held in trust for the remaindermen. But when she repudiated the trust, she thereby gave notice to the petitioners, remaindermen, that she was holding all the property in her own

right and adversely to them. Now by all the authorities, where a person holds property for himself and others, either as joint tenants, tenants in common, or holds it in trust, the statute of limitations commences to run as of the time such holder gives notice of his repudiation of such relationship and claims ownership of the property adversely to all others. In 33 Am. Jur., Life Estates, Remainders, etc., sec. 188, p. 661, it is said, "Repudiation of a trust for the remaindermen will set the statute of limitations in motion." *Commonwealth* v. *Clark*, 119 Ky. 85, 83 S. W. 100, 9 L. R. A. (N. S.) 750.

The case of *Earp* v. *Edgington*, 107 Tenn. 23, 64 S. W. 40, which involved the question of the revocation of a will, has no application to the instant case and the same may be said of *Robinson* v. *Harrison*, 2 Tenn. Ch. 11.

It is furthermore insisted on the brief that, where the widow dissents from the will and receives property to which remaindermen are entitled, she holds the same as trustee, and that "such remaindermen may sue the executor or administrator for such trust property." This is wholly foreign to the issue before us since Mrs Hughes received nothing from the executor but only that which she was entitled to under the law. Moreover, the petitioners did not seek a writ of injunction to restrain Mrs. Hughes from defeating the provisions of the will, as was done in *Seat* v. *Seat*, 172 Tenn. 618, 113 S. W. (2d) 751; nor seek any recovery against the executor-trustee in any amount.

The case of *Hamilton* v. *Mound City Mut. Life Ins. Co.*, 3 Tenn. Ch. 124, cited by petitioners, does not involve the time as of which the statute commences to run. There the parents were given the use of the property with the right to encroach upon the *corpus* "for their support" and also

"the power of disposition". No such situation exists in the instant case.

The contention here made that we have announced a rule which radically affects the administration of estates is unfounded. We have dealt only with the statute of limitations as it affects the rights of beneficiaries under a contract to execute mutual wills where one of the parties repudiates it and claims an interest that is adverse to them.

Petition denied.

All Justices concur.