**In the Matter of the ESTATE OF Mildred G. FUSSE, Deceased, Appellee.**

**Claim of William A. FUSSE, Claimant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 2, 1990.

Application for Permission to Appeal Denied by Supreme Court Jan. 7, 1991.

Mark W. Henderson, Hendersonville, for appellee.

Tyree B. Harris, Nashville, for claimant/appellant.

OPINION

TODD, Presiding Judge.

This cause was initiated when William A. Fusse filed a verified claim against the estate of Mildred Goodwin Fusse, deceased, alleging that deceased had breached a contract with Ernest L. Fusse to will one-half of her estate to William A. Fusse. Both the claimant and the executrix filed motions for summary judgment, but there is no record of the disposition of either motion. The Trial Judge, sitting without a jury, disallowed and dismissed the claim, and the claimant appealed to this Court presenting a single issue as follows:

> Were the wills of Mr. and Mrs. Ernest L. Fusse, dated May 29, 1971, mutual wills and therefore contractually binding upon the last to die?

Ernest L. Fusse and wife Mildred G. Fusse had two children, William A. Fusse, the claimant herein, and Doris Fusse Hudson, the executrix herein. On May 29, 1971, Ernest L. Fusse and wife, Mildred G. Fusse executed identical wills, except that Mildred was named the primary beneficiary and executrix of the will of Ernest, and Ernest was named the primary beneficiary and executor of the will of Mildred. Each will, after giving all of the property of the testator to the primary beneficiary, provided that, if the primary beneficiary should predecease the testator, then the property of the testator would belong in equal parts to Doris F. Hudson and William A. Fusse.

Ernest L. Fusse died in March, 1988; and his will was never probated. Mildred G. Fusse died May 25, 1989. The testimony refers to a 1989 will of Mrs. Fusse, but no evidence is found in the record as to its contents. As to the 1971 will of Mrs. Fusse, the executrix testified that her mother tore it up when she made the new one. The brief of the executrix states:

The new will expressly revoked all prior wills, left her real property and its contents to Doris F. Hudson and divided the remaining assets equally between her two children. Mildred Fusse died shortly thereafter, and her new will was probated in common form in May, 1989.

No evidence is found in the record to substantiate the quoted statements.

Although there is evidence that Mildred G. Fusse revoked her 1971 will, and made a new will, no evidence is found that the claimant was prejudiced by the change in wills. Nevertheless, the parties treat this fact as established, and this opinion is written on the basis of a proven will whereby the claimant would receive less than that devised to him in the 1971 will.

Initially, it should be noted that the 1971 wills were executed prior to the enactment of T.C.A. § 32–3–107 regarding contracts to make a will, which statute has no application to the present case. *Junot v. Estate of Gilliam,* Tenn.1988, 759 S.W.2d 654.

■ In *Junot v. Gilliam* there was an action *to set aside* the probate of a will executed on January 28, 1985, on the theory that testatrix and her husband had executed mutual and reciprocal wills in 1974 and that the 1974 will of testatrix was irrevocable. A claim was also filed against the estate for the share of the claimant under the 1974 will. The Supreme Court held that T.C.A. § 32–3–107 had no retroactive application to the 1974 wills or any contemporaneous contract in reference thereto. Therefore, the principles stated in *Junot* are applicable to the present case which is in the same position with reference to said statute.

In *Junot,* the Supreme Court said:

Under the terms of Mr. Gilliam's 1974 will, the entire estate vested in Mrs. Gilliam upon his death, unconditionally and without any kind of restraint or restriction. Unless a contract between the parties could be proved, so as to make her will of the same date irrevocable, she was free to dispose of the estate as she saw fit.

There was very little evidence concerning any such contract. Mr. Gilliam's brother and other witnesses testified that in the eleven years between the execution of the 1974 wills and the death of Mr. Gilliam in January, 1985, Mr. and Mrs. Gilliam made reference that they had "traded wills." Counsel for appellants insist that this is clear evidence that the wills were intended by Mr. and Mrs. Gilliam to be irrevocable after the death of the first of them and resulted from a contract between the parties to that effect.

We respectfully disagree. It is well settled that in order to establish a contract to make or not to revoke a will, where the contract is not otherwise documented, evidence of such a contract must be clear and convincing. The mere fact that parties have executed mutual and reciprocal wills on the same date is not, in and of itself, sufficient to establish the existence of such a contract. *See First Christian Church of Guthrie, Kentucky v. Moneypenny,* 59 Tenn.App. 229, 439 S.W.2d 620 (1968). That fact, together with other evidence concerning the circumstances of the parties, may be

sufficient to establish such a contract. *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.,* 184 Tenn. 629, 202 S.W.2d 178 (1947). The issue, however, in every case is one of fact, not law, to be determined in light of all of the surrounding circumstances. In the *Church of Christ Home* case, *supra,* there had been a concurrent finding of fact by the trial court and the Court of Appeals that an agreement to execute irrevocable mutual wills did, in fact, exist. Since there was material evidence in the record to support that finding, the issue was foreclosed in the Supreme Court. T.C.A. § 27–1–113.

\* \* \* \* \* \*

The evidence to establish a contract not to revoke a will must be clear and convincing. *Stone v. Manning,* 103 Tenn. 232, 52 S.W. 990 (1899).

Plaintiff's brief recognizes the holding in *Junot,* but relies upon a previous decision of the Supreme Court in *Harris v. Morgan,* 157 Tenn. 140, 7 S.W.2d 53 (1928). In that case the Trial Court sustained a demurrer (motion to dismiss for failure to state a claim for which relief can be granted) to a bill (complaint) which asserted the following facts:

Morgan made an oral agreement with three other co-owners of property that each would make a will providing that, after the death of the last of the co-owners, the property would be divided among the children of Morgan. All four wills were executed as agreed. The three co-owners announced their intention to revoke their wills and make other disposition of their interests in the property.

The bill (complaint) prayed for specific performance of the agreement and injunction against any change in the agreed disposition of the property.

The Trial Court ruled that the oral agreement was unenforceable because it related to the transfer of real estate. The Supreme Court ruled otherwise, holding that the written wills, signed by the owners of the property, were sufficient to satisfy the statute of frauds. In discussing this issue, the Supreme Court said:

(6) In determining whether the written will of each of the three defendants evidences the fact that a contract had been entered into by such defendant with his or her brothers and sisters, whereby the will of each was written and executed, it seems to us proper to consider the circumstances under which each of the four wills was prepared and executed, as disclosed by the averments of the original bill. Looking to these circumstances, it appears that the four wills were executed simultaneously, at the same place, and were witnessed by the same persons. They manifest a joint purpose, which could not be consummated except through the co-operation and agreement of the four parties in interest, that their joint property be held intact until the death of the survivor, and then be distributed among the children of one of them.

The four instruments, executed under these circumstances, must necessarily be considered as parts of a single transaction, to the same extent as if they had been executed upon the same sheet of paper. It is proper, therefore, that they be construed and considered together, and not each one separately.

\* \* \* \* \* \*

(8) It has been held that the execution of mutual wills by two persons, each of whom is named as the beneficiary of the other, does not of itself, and without the aid of extrinsic circumstances, evidence the fact of a contractual relation, since the execution of the two wills may have been merely coincidental, with no knowledge on the part of one that the other was making, or had made, a similar will.

It has, however, been ruled otherwise in the case of a joint will executed and signed by two persons, disposing of joint or separate property, for the benefit of the survivor.

\* \* \* \* \* \*

(9) The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of

the survivor among the same persons, negative any conclusion but that they were executed pursuant to a joint compact or agreement, and that each was executed in consideration of the execution of the other three. No parol evidence would therefore, be necessary to establish the fact of the compact or agreement. (10) "The Statute of Frauds is, after all, merely a statute declaring that a certain kind of evidence is required to support an action in certain cases." *Huffine v. McCampbell*, 149 Tenn., 47, 48 [257 S.W. 80]. We conclude, therefore, that the written will of each of the three defendants, considered in connection with the other three wills, constitutes written evidence of the contract between the parties, so that the contract does not rest entirely in parol. *Huffine v. McCampbell, supra; Brewer v. Glass Casket Co.*, 139 Tenn., 97, 113 [201 S.W. 145].

\* \* \* \* \* \*

(12) The contract which may be proven, under the averments of the bill, is, therefore, the contract which appears from the recitations of the four wills, construed together. Such a contract would not be sufficient to charge the specific land described in the bill with a trust in favor of complainant, during the lifetime of the defendants, but we think the averments of the bill are sufficient, if supported by proof, to authorize a decree restraining the defendants from revoking their respective wills, or from making any disposition of their respective property, by gift, or conveyance in the nature of a gift, which would defeat the agreement with complainant's father.

It is seen that the statements in *Harris v. Morgan*, taken *out of context*, may support an insistence that the fact of joint execution of reciprocal wills by co-tenants is sufficient to establish a contract to perpetuate those wills. However, this Court views the statements *in context* as indicating only that such wills satisfy the statute of frauds. It should be noted that the opinion indicates merely that the bill (complaint) contained averments (of oral agreements and written wills) which were sufficient *if proven* to justify the relief sought. This explains the fact that, in *Junot*, the Supreme Court did not deem it necessary to cite, distinguish, or overrule *Harris v. Morgan*.

In *Church of Christ Home for the Aged v. Nashville Trust Company*, 184 Tenn. 629, 202 S.W.2d 178 (1947), the plaintiffs sought specific performance of an agreement between Hughes and his wife to execute wills leaving the remainder of their property to plaintiffs upon the death of the survivor. By each of the wills, the testator bequeathed to the surviving spouse five dollars and the remainder in trust for the surviving spouse for life with remainder to plaintiffs. Hughes died first. Mrs. Hughes dissented and was awarded year's support. Thereafter, Mrs. Hughes made a new and different will. Her executor responded to the suit by denying any contract binding Mrs. Hughes to will her property to plaintiffs. The Trial Judge found there was such a contract, and this Court concurred on appeal. Upon certiorari to the Supreme Court, it held:

(1) The concurrent finding by the Chancellor and Court of Appeals that the parties (Mr. and Mrs. Hughes) had entered into an agreement to execute, and did execute, companion wills which in legal effect endowed the complainants with their joint estates, following the termination of a life estate therein in the survivor, is not open for consideration by this Court. Petitioners contend, however, that there is no evidence to support the concurrent finding and that the Court of Appeals based its conclusion solely upon the language in the companion wills, which was error. While there are many cases holding that a contract to execute mutual wills cannot be determined alone by the contents of the wills, especially where there is no reference in said wills to such a contract there are cases where the mutual or reciprocal wills in and of themselves furnish ample evidence of such a contract. In *Harris v. Morgan*, 157 Tenn. 140, 7 S.W.(2d) 53, the Court gave due consideration to the contents of four mutual wills as proof of

the agreement, as shown by the following comment (at page 154 of 157 Tenn., at page 57 of 7 S.W. (2d)): "The four wills bearing the same date, each disposing of property to the survivors, and with the direction that such property be divided at the death of the survivor among the same persons, *negative any conclusion but that they were executed pursuant to a joint compact or agreement,* and that each was executed in consideration of the execution of the other three. No parol evidence would, therefore, be necessary to establish the fact of the compact or agreement." (Italics ours.)

Where, as in the instant case, the wills are identical in language, witnessed by the same persons, at the same time and place, and the contracting parties are husband and wife, it is well nigh conclusive that such wills were executed in accordance with their mutual contract to dispose of their property in this manner.

The above quotation from *Junot* indicates that the Supreme Court noted *Church of Christ* and apparently distinguished it by the concurrence of the trial court and this Court in a finding of fact. However, *Junot,* quoted above also cites *First Christian Church of Guthrie, Ky. v. Moneypenny,* for the rule that the execution of contemporaneous mutual wills is not in and of itself sufficient to establish a contract to perpetuate such wills.

The most recent pronouncement of the Supreme Court constitutes the law of this State on the subject. *McCleary v. Morgan,* 60 Tenn.App. 578, 449 S.W.2d 440 (1968). It must be followed by all subordinate courts. *Clinard v. Pennington,* 59 Tenn.App. 128, 438 S.W.2d 748 (1968) and authorities cited therein.

Nevertheless, plaintiff insists that a binding contract not to revoke the 1971 will of the testatrix is shown by clear and convincing evidence in this record.

It is undisputed that Ernest L. Fusse and Mildred G. Fusse agreed to and did contemporaneously execute reciprocal wills in 1971.

Claimant testified that, shortly after the execution of the 1971 wills, the testatrix told him that she and his father "had made their wills and that they had agreed to leave everything to each other so long as they lived and when that one died, what was left would be divided between my sister and myself." The executrix (sister) did not controvert this statement but explained that it meant that the parents had agreed to make the wills, not to make them irrevocable. This interpretation of the mother's statement is supported by uncontroverted evidence that, in 1971, the father was hostile to the son and unwilling to will any of his property to him, but was finally persuaded to do so which resulted in the "agreement" to have the wills drawn and executed.

This interpretation of the mother's statement (and of the intent of the parties) is supported by the testimony of the lawyer who prepared the 1971 wills (the husband of the executrix) that:

That was made—their intention was to leave everything they had to each other with the understanding—this came from Mr. Fusse—with the understanding that they could do a new Will any time they wanted to.

\* \* \* \* \* \*

I didn't put those two things together and review them and everything like that when I went to do the Wills. They just each one wanted a Will leaving everything to each other with the understanding that the survivor could make another Will or whatever.

\* \* \* \* \* \*

No. At the time he drew a Will, he said, "Now, I'm going to leave everything to her, but can't I change this any time I want to?" And I said, "Yes, sir."

The interpretation is also supported by the testimony of claimant that, shortly before the death of his mother, he had a conversation with her as follows:

She had asked me if it was all right with me if she left the house to my sister, and left my share in cash.

\* \* \* \* \* \*

A. I said that would be fine with me.

Q. And you said you didn't need them, you've got a house and furniture, didn't you say that?

A. Right.

Even though there may be circumstances under which the execution of joint reciprocal wills may raise an inference of a contract not to change the wills, such circumstances do not appear in the present case. Absent such circumstances, the bare fact of the execution of joint reciprocal wills does not establish such circumstances.

Among the circumstances which might support a finding of a binding agreement not to change a reciprocal will would be the receipt by the survivor of a substantial devise under the will of the first testator to die. This would create an equitable situation militating against a change of the survivor's will. Such a situation is not shown in the present case. The will of Mr. Fusse was not probated, and there is no evidence that Mrs. Fusse received any tangible benefit from it.

This Court concurs in the finding of the Trial Court that no contract was proven prohibiting Mrs. Fusse from revoking her 1971 will.

The executrix has moved for damages for frivolous appeal, but such are not deemed appropriate in the present case.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

CANTRELL and KOCH, JJ., concur.