# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 12, 2001 Session

## In Re: ESTATE of HILLARY R. SANDERS

**Appeal from the Chancery Court for Claiborne County**
**No. 1432     Conrad E. Troutman, Chancellor**

**FILED FEBRUARY 25, 2002**

**No. E2001-00946-COA-R9-CV**

---

In this appeal from the Claiborne County Chancery Court the Appellants, Conda Sanders, Bratcher Lee Sanders, John Sanders, Linda Blazier, Bettie Gray, Kathryne Brock and Vonna Beason, contest the Trial Court's finding that the valid and controlling will of Hillary Sanders is the will executed by him on June 22, 1992. The Appellants contend that the joint will executed by Hillary Sanders and Fairobelle Sanders on September 8, 1974, is an irrevocable contract and, therefore, it, not the will of June 22, 1992, is the valid and controlling will of Hillary Sanders. We affirm the order of the Trial Court and remand with directions.

**Tenn.R.App.P. 9 Interlocutory Appeal ; Judgment of the Chancery Court Affirmed;**
**Cause Remanded With Directions**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

John Thomas O'Connor, Knoxville, Tennessee, for the Appellants, Conda Sanders, Bratcher Lee Sanders, John Sanders and Linda Blazier

Robert W. Godwin, Knoxville, Tennessee, for the Appellants, Bettie Gray, Kathryne Brock and Vonna Beason

Joe G. Bagwell, Knoxville, Tennessee, for the Appellees, Peter N. Harness, Dennis R. Keck and Elmer W. Sanders

## OPINION

This is a consolidation of two separate appeals from the Chancery Court for Claiborne County - one by Conda Sanders, Bratcher Lee Sanders, John Sanders and Linda Blazier and the other by Bettie Gray, Kathryne Brock, and Vonna Beason. All of the Appellants are beneficiaries under a will executed by Hillary Sanders on June 22, 1992, and also under a joint will executed by Hillary Sanders and his then wife, Fairobelle Sanders, on September 8, 1974. The Appellants Bettie Gray, and Vonna Beason are the children of Fairobelle Sanders and Kathryne Brock is the widow and heir

of John James Brock who was also a child of Fairobelle Sanders. The Appellants Conda Sanders, Bratcher Lee Sanders and John F. Sanders are surviving brothers of Hillary Sanders and Linda Blazier is a niece of Hillary Sanders. The Appellees, Peter N. Harness, Dennis R. Keck and Elmer W. Sanders are the executors of the estate of Hillary Sanders. Dennis R. Keck is, in addition, a beneficiary under the will of June 22, 1992, while Elmer W. Sanders, who is also a surviving brother of Hillary Sanders, is a beneficiary under both the will of June 22, 1992, and the will of September 8, 1974.

We restate the issue presented for our review as follows:

Does the joint will executed by Hillary Sanders and Fairobelle Sanders on September 8, 1974, constitute a contract for an irrevocable will?

Hillary R. Sanders and Fairobelle Sanders were married in 1955. At the time, Fairobelle Sanders had three children from a previous marriage - Bettie Gray, Vonna Beason and John James Brock. On September 8, 1974, Hillary R. Sanders and Fairobelle Sanders executed a joint will. Fairobelle Sanders died on January 6, 1975, and the joint will was admitted to probate on February 12, 1975.

Hillary Sanders re-married at least twice after the death of Fairobelle Sanders, although he was not married at the time of his death. Hillary Sanders executed several wills over the next years, the last on June 22, 1992. Hillary Sanders died on May 11, 1997, and his will of June 22, 1992, was admitted to probate on June 19, 1997.

On September 8, 1997, the Appellees, executors under the June 22,1992, will, petitioned the Chancery Court of Claiborne County for authority to sell property of the estate and for declaratory orders interpreting the will and giving advice and direction. The Appellants' answer to this petition asserts that the joint will of September 8, 1974, was binding upon Hillary Sanders and that it should be declared his true and controlling will, taking precedence over the will of June 22, 1992.

A hearing was held before the Trial Court on March 17, 1999, and on April 12, 2000, the Court entered its Order and attached memorandum opinion finding the will of June 22, 1992, to be the valid and controlling will of Hillary Sanders. Thereafter, the Appellants were granted permission to appeal the order pursuant to Tenn.R.App.P. 9(a).

Our review of this non-jury case is *de novo* upon the record of the proceedings below. There is no presumption as to the correctness of the Trial Court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996). However, pursuant to Tenn.R.App.P. 13(d), the Trial Court's findings of fact are presumed to be correct unless there is a preponderance of evidence otherwise.

The Appellants' argument that the joint will of September 8, 1974, is the valid and controlling will of Hillary Sanders is premised upon the assertion that, at the time of its execution, it was the intention of Hillary Sanders and his then wife, Fairobelle Sanders, that this will be irrevocable as to

the survivor and that the will constitutes a contract to that effect. The Appellees do not dispute that the will contains contractual provisions, however, they contend that it is not a contract that the will be irrevocable but only a contract as to the disposal of the parties' joint and mutual assets. Consistent with the order of the Trial Court, the Appellees contend that the joint will of September 8, 1974, was revoked by the will executed by Hillary Sanders on June 22, 1992. We are compelled to agree with the Appellees.

The cardinal rule governing the courts in the construction of a will is the intention of the testator which should always be effected absent a rule of law or public policy dictating otherwise. *Winningham v. Winningham*, 966 S.W.2d 48 (Tenn. 1998).

In support of their argument that terminology in the 1974 will supports a construction that it is an irrevocable will the Appellants quote phrasing from the will which states "...this Will which we mutually agreed to and contract as follows:". While this language confirms the parties' intent to contract it does not support the argument that the parties specifically contracted that the will be irrevocable. Other phrases from the 1974 will quoted by the Appellants in support of their argument that the parties contracted that the will be irrevocable are, "[t]hat the provisions of this Will are to be carried out by the survivor so as to carry out the intentions of the Testator which should predecease the surviving Testator", "... we so devise our property at the death of the survivor to be divided equally between Fairobelle Sanders' three children and H.R. Sanders' brothers...", "... the remainder of my one-half, is hereby willed, devised and bequeathed to my brothers, BRATCHER L. SANDERS, JOHN F. SANDERS, CONDA SANDERS and ELMER W. SANDERS. "Fairobelle Sanders' one-half shall be divided between her three children, BETTIE GRAY, JOHN JAMES BROCK and VONNA BEASON.", "It is our express wish and desire that the survivor use as much of the real and personal estate as is needed during his lifetime and at the survivor's death, or if we should die in a common disaster, then our estate be divided between the two lines of heirs as set out above." We find nothing in these phrases which compels us to conclude that the parties contracted that the 1974 will was to be irrevocable, although we do find an intent that the survivor dispose of the parties' joint and mutual property in a particular manner. In accordance with this construction we specifically note the use of the words "our property" and "my one-half" and "Fairobelle Sanders' one-half". "Our property" must necessarily refer to the property owned by the testators as of the moment of Fairobelle Sander's death as she would not have been a co-owner of any property acquired after that date. And the words "my one-half" and "Fairobelle Sanders' one-half" presuppose a whole in which the parties shared equally which they intended be devised in a certain way upon the death of the survivor.

The Appellants also assert that the testimony of Chancellor Billy Joe White, a friend of the testators who drafted the will while in private practice and witnessed its execution, provides evidence that the testators intended that the 1974 will be irrevocable and that it was drafted to express that intent. Our review of Chancellor White's testimony confirms that it was his perception that Hillary Sanders and Fairobelle Sanders did intend to bind themselves to the 1974 will; however, his testimony does not compel us to find that their intent was that the will be irrevocable as a will. Rather, we find that Chancellor White's testimony supports the Appellees' argument that the contract arising from the 1974 will is only a contract concerning disposal of the joint or mutual assets of the

testators. When asked whether, as drafter of the will, he intended that the 1974 will be a contract, Chancellor White replies, "Yes. It was stated, perhaps inartfully, but that is what they wanted done. They wanted a contract for her (Fairobelle Sander's) children to be fully protected for one half of what *they* had at the death of the survivor" (emphasis added).

Also belying the Appellants' argument are Chancellor White's responses to questions concerning the following paragraph from the will executed by Hillary Sanders on June 22, 1992, :

> SECOND: I, H.R. Sanders, having heretofore entered into and made a will with my deceased wife, FAIROBELLE SANDERS, who died on 6 January, 1975, do hereby state that at the time of her death we held $88, 939.90 in notes from the sale of the Claiborne County Boat Dock; certain real property and furniture in Florida, which was sold and the money used; two (2) vehicles which were sold for $600.00 and $800.00 and a coin collection which I had acquired prior to my marriage, and furniture in my home with at least one-half (1/2) of the value therein was given to her children after her death. It is my understanding that at my death her estate will take one-half (1/2) of the remainder of the boat dock notes if any are remaining inasmuch as I am living from that income as my sole source of income at this time. Having considered all these items and having remarried to Willa C. Sanders, it is my express wish, and I hereby will, devise and bequeath the property taken as tenants by the entirety and funds having accumulated thereafter and my one-half (1/2) of Fairobelle's estate as follows:

By subsequent language Hillary Sanders then devises all property to his wife and brothers with the exception of property in Knox County inherited from Fairobelle Sanders which he bequeaths to her three children. When asked about this portion of the will Chancellor White testifies, "...I think certainly that he is acknowledging that they had an agreement to divide their joint estate up, minus what was used to live on between the two lines of heirs. That -- That, ideally --That is what they had in mind."

Chancellor White also testifies with respect to the June 22, 1992, will that "(t)he question will come down to whether or not this will satisfies the requirements upon Pete (Hillary) Sanders, as far as the joint will was concerned." This statement appropriately shifts the focus from the question of whether the 1974 will was irrevocable to the question of whether the 1992 will, as the controlling will of Hillary Sanders, fulfilled whatever contractual obligations he might have had under the 1974 joint will.

In addition to the testimony of Chancellor White, the Appellants offer the testimony of Fairobelle Sander's daughter, Bettie Gray, who avowed that her mother had stated in the presence of Mr. Sanders that the joint will was executed because "she wanted us to have our share." As with the testimony of Chancellor White, we find nothing in the testimony of Ms. Gray which compels us to find that the 1974 will was an irrevocable will and her testimony, like that of Chancellor White, is consistent with the Appellees' argument that the 1974 will was a contract to dispose of the testators' property in a particular way and not a contract that the will be irrevocable.

The Appellants also reference language in a codicil and other wills executed by Hillary Sanders after the death of Fairobelle Sanders to support their argument for the irrevocability of the 1974 will. While we agree that these documents evince Hillary Sander's acknowledgment of contractual obligations under the 1974 will, we find nothing in these documents which convinces us that the 1974 will was contracted to be irrevocable.

The Appellants cite *In re Estate of Hurdle,* 868 S.W.2d 627 (Tenn. Ct. App. 1993) wherein the Court indicated that, although a will is generally revocable, if the parties contract with each other to limit future testamentary distribution the will of the first party to die is the will of both and the will of the survivor is ineffective. However, in the *Hurdle* case the issue before the Court was whether reciprocal wills were irrevocable. The Court held that they were not because contractual intent to that effect was not established. The Court's assertion which the Appellants rely on is *dicta* and fails to acknowledge the distinction between will and contract.

In the case of *Rogers v. Russell*, 733 S.W.2d 79 (Tenn. Ct. App. 1986), the defendant submitted a motion for directed verdict invalidating a will executed by her mother in 1977 on grounds that a prior joint will executed by her mother and father in 1968 became irrevocable upon the death of her father in 1968. This Court affirmed the trial court's denial of the defendant's motion for directed verdict stating at page 86 that the defendant's assumption that a joint will becomes irrevocable upon the death of the first testator was erroneous:

> This fails to recognize the distinction between the contractual and the testamentary character of the instrument. Wills, by their very nature, must remain revocable until the testator's death. Pritchard § § 27 & 243 and Page § 5.17. It is the contract to dispose of property in accordance with the terms of the will that becomes irrevocable at the death of the first testator. *Church of Christ Home for Aged v. Nashville Trust Co.*, 184 Tenn. 629, 637, 202 S.W.2d 178, 181 (1947).

As in *Rogers*, we find a distinction in the case now before us between the contractual and testamentary character of the joint will of September 8, 1974. Upon consideration of the record we do not find that the evidence preponderates against the finding of the Trial Court that the will executed by Hillary Sanders on June 22, 1992, is his valid and controlling will. Our ruling in this case is limited to this issue which was the sole issue before the Trial Court. Although the Appellees conceded at trial that the joint will of September 8, 1974, is a contract, we make no determination as to what, if any, contractual obligations under the joint will remain unfulfilled and we remand to the Trial Court for that determination and to fashion remedies for breach of contract if such is found.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings as may be necessary as directed by this opinion and for collection of costs below which are, as are costs of appeal, adjudged against the Appellants, Conda Sanders, Bratcher Lee Sanders, John Sanders, Linda Blazier, Bettie Gray, Kathryne Brock and Vonna Beason, and their sureties.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE